(No. 49059.—)
(No. 49235.—)

THE PEOPLE *ex rel.* GROVER TUCKER *et al.,* Appellees, v. PETER A. KOTSOS, Chairman, Illinois Parole and Pardon Board, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KEVIN PATTERSON, Appellant.

*Opinion filed October 5, 1977.*

William J. Scott, Attorney General, of Springfield (James B. Zagel, Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, of counsel), for appellant.

Edwin R. McCullough and Thomas J. Kelly, of Chicago, for appellees.

Thomas Peters, of Murphy, Putnick & Peters, of Chicago, for appellant.

William J. Scott, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

John J. Doherty, Public Defender, of Chicago, *amicus curiae.*

MR. JUSTICE CLARK delivered the opinion of the court:

These consolidated cases summon our reexamination of the power of the circuit courts of Illinois to grant bail to persons incarcerated pending the outcome of parole revocation proceedings. That reexamination is prompted by the availability of such bail to persons incarcerated

pending the outcome of probation revocation proceedings, and by two intervening decisions of the United States Supreme Court (*Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593; *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756) during the seven years since this court last addressed this issue in *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, *cert. denied* (1971), 402 U.S. 976, 29 L. Ed. 2d 141, 91 S. Ct. 1679. We reaffirm the earlier decision that the circuit courts may not grant bail to persons detained on parole violation warrants.

Respondents in cause No. 49059, Grover Tucker and Ernest Denson, were arrested on parole violation warrants while on bail from felony charges in the circuit court of Cook County. Tucker was arrested on August 2, 1974. At a preliminary hearing six days later (August 8, 1974), relying upon the circuit court's finding of probable cause to believe that Tucker had committed a felony, the parole board found probable cause to believe that Tucker had violated the conditions of his parole. One week later at a "second" preliminary hearing, the board found probable cause to believe that Tucker had been in possession of a firearm. One year and two months later (October 1, 1975), the parole board revoked Tucker's parole. A week later he was convicted of attempted robbery and burglary.

Denson was arrested on September 3, 1974. He requested continuances of preliminary hearings scheduled for November 27, 1974, December 27, 1974, January 10, 1975, and January 17, 1975. On the latter date he made a request for bail which was denied. On March 1, 1976, he was sentenced to incarceration for armed robbery.

Both Tucker and Denson had petitioned the circuit court of Cook County on March 27, 1975, for a writ of *mandamus* compelling the parole board to withdraw its parole violation warrant, or alternatively, grant bail to Tucker and Denson. The circuit court denied the petition, and on September 8, 1976, the Appellate Court, First

District (Fourth Division) affirmed, but stated that the circuit court itself could grant bail (42 Ill. App. 3d 812). We granted the State's petition for leave to appeal.

Petitioner in cause No. 49235, Kevin Patterson, was admitted to parole on June 19, 1974. On March 20, 1975, he was arrested on a charge of armed robbery. On June 15, 1975, while incarcerated at Cook County jail, he was served with a parole violation warrant. On September 17, 1976, the parole board "continued" the matter of revocation of parole pending disposition of the underlying criminal charges. On December 7, 1976, Patterson's attorney wrote a letter to the parole board demanding a hearing. On December 10, 1976, the trial court set bail on the underlying criminal charges, but found that it lacked jurisdiction to set bail on the parole violation charges and granted Patterson leave to appeal. On December 20, 1976, the Appellate Court, First District (Third Division), affirmed in an unsigned order. On January 7, 1977, Patterson's attorney reiterated his demand to the parole board for a hearing. We granted Patterson's petition for leave to appeal. On March 29, 1977, the parole board again "continued" the matter of revocation pending disposition of the underlying criminal charges.

We first address the threshold question of whether the appellate court's decision in No. 49059 must be vacated as moot in light of Tucker's conviction and parole revocation, and Denson's conviction. We adhere to a rigid standard which requires that where no actual rights or interests of the parties remain, the Illinois courts should not address the issues raised by the litigation. (See, *e.g., Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184; *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1.) Revocation of Tucker's parole terminated any actual rights or interests he had in the availability of bail pending revocation. As to him, therefore, the appellate court's judgment in No. 49059 must be vacated as moot. The record before us does not indicate that Denson's parole has

been revoked, a fact which the State surely would have brought to our attention. He presumably is otherwise eligible to be considered for bail pending appeal of his conviction. (See Ill. Rev. Stat. 1975, ch. 38, par. 110—7(d); 58 Ill. 2d R. 609(b).) Denson therefore continues to have an actual interest in the availability of bail on the parole violation warrants. Nevertheless, upon remand, the circuit court is instructed to dismiss the cause as moot if Denson's parole already has been revoked. In light of the foregoing holding as to Denson in cause No. 49059, upon remand of cause No. 49235, the circuit court also is instructed to dismiss the cause as moot if Patterson's parole already has been revoked.

The State also contends that the statement of the appellate court in No. 49059 regarding the circuit court's power to grant bail on parole violation warrants was an "advisory opinion." The State therefore would have us expunge that portion of the appellate court's opinion without consideration of its merits. We decline to do so. Unlike an advisory opinion, the appellate court's statement addressed the live, adverse and actual interests of parties before the court. The appellate court's statement as to the availability of a form of relief not specifically requested in the record before it (*i.e.*, bail from the circuit court) was properly ancillary to its explanation of the unavailability of the specific form of relief which had been requested (*i.e.*, *mandamus* to the parole board to grant bail or release). This court has used the same jurisprudential device. (See *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 177.) Indeed, our constitution provides: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." (Ill. Const. 1970, art. I, sec. 12.) Given a plaintiff with a live interest in a remedy, it was not improper for the appellate court to seek to guide him toward what it considered to be the proper form

of relief, thus upholding the "expression of a philosophy" of our constitution. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277.) Therefore, while we disagree on the merits of that part of the appellate court's opinion, we hold that it was not error for the appellate court to address this issue.

The appellate court in No. 49059 held, and the prisoners in both cases now claim, that denial of bail to accused parole violators, while permitting bail for accused probation violators (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(b)), would deny parole violators the equal protection of the laws in violation of the fourteenth amendment to the United States Constitution and article I, section 2, of our constitution. Thus the appellate court reasoned that the parole provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—1 *et seq.*) ought to be construed to permit such bail. (42 Ill. App. 3d 812, 816.) (A United States district court also reached that conclusion in ruling on a petition for *habeas corpus. (United States ex rel. Dereczynski v. Longo* (N.D. Ill. 1973), 368 F. Supp. 682.)) They rely in part upon a footnote from *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782 n.3, 36 L. Ed. 2d 656, 661-62 n.3, 93 S. Ct. 1756, 1759 n.3, which noted agreement among the commentators that revocation of probation and parole are "constitutionally indistinguishable." The court used that "agreement" however, as authority for finding that similar procedural due process safeguards attach to each event. Analytically, this use of authority must be taken to mean that the court found that each class of prisoner had a functionally equivalent liberty interest in their particular form of conditional liberty, requiring equivalent procedural safeguards. Once these minimum due process procedural safeguards have been provided, however, nothing in the court's opinion even remotely suggests that granting an additional remedy, such as bail, to one group would

require that it also be granted to the other group. While "the concepts of equal protection and due process *** are not mutually exclusive," neither are the terms "always interchangeable." (*Bolling v. Sharpe* (1954), 347 U.S. 497, 499, 98 L. Ed. 884, 886, 74 S. Ct. 693, 694; *cf. Buckley v. Valeo* (1976), 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612 (due process under the fifth amendment includes "equal protection").) Thus, that individuals have the same minimum due process rights does not require that they be treated equally in every other way.

The prisoners claim that even if the *Gagnon v. Scarpelli* footnote does not so hold, the unavailability of bail to them (as persons incarcerated pending resolution of parole violation charges) denies them the equal protection of the laws, because persons incarcerated pending the resolution of probation violation charges may be admitted to bail.

The determination of whether a given legislative classification denies persons the equal protection of the laws is an extremely sensitive area of judicial review. It requires judges to "second guess" the judgment of legislators, with very little textual constitutional basis to rely upon in their analysis. (See generally *People v. McCabe* (1971), 49 Ill. 2d 338.) In the vast majority of cases, the courts restrict their role to determining whether the particular legislative classification is rationally designed to further a legitimate State purpose. (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 17, 36 L. Ed. 2d 16, 33, 93 S. Ct. 1278, 1288; *Maher v. Roe* (1977), 432 U.S. 464, 470, 53 L. Ed. 2d 484, 492, 97 S. Ct. 2376, 2381.) It is only to protect fundamental constitutional rights (see *Hoskins v. Walker* (1974), 57 Ill. 2d 503, 508; accord, *Harper v. Virginia State Board of Elections* (1966), 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079; see also *United States v. Carolene Products Co.* (1938), 304 U.S. 144, 152 n.4, 82 L. Ed. 1234, 1241-42 n.4, 58 S. Ct. 778, 783 n.4) and to protect members of

"suspect classes," *i.e.*, groups that historically have been the subject of widespread, substantial, and purposeful discrimination (*cf. San Antonio Independent School District v. Rodriguez*) that the courts go beyond their generally deferential analysis of legislative classifications. Not surprisingly, the prisoners in the instant case claim that their interest in continued conditional liberty is such a fundamental interest. We disagree.

Fundamental interests generally are those that lie at the heart of the relationship between the individual and a republican form of nationally integrated government. Thus, only interests such as those in the expression of ideas (see, *e.g., Buckley v. Valeo* (1976), 424 U.S. 1, 44-45, 46 L. Ed. 2d 659, 702, 96 S. Ct. 612, 647), in participation in the political process (see, *e.g., Harper v. Virginia State Board of Elections*), in travel among the States (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322), and in privacy with regard to the most intimate and personal aspects of one's life (see, *e.g., Skinner v. Oklahoma ex rel. Williamson* (1942), 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110) are fundamental. A parolee's interest in release from incarceration, while no doubt important to him, is not among those fundamental interests. Accord, *Liistro v. Robinson* (1976), 170 Conn. 116, 365 A.2d 109.

Nor are parolees a "suspect class." What is "suspect" about a suspect classification is its long history of use to oppress individuals whose only misfortune is to have been born into the class. Such is hardly the case with parolees, whose proved personal misconduct merited their being sentenced to the custody of the Department of Corrections. (See generally Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1 *et seq.*) We also note that the United States Supreme Court has had ample opportunity to apply strict scrutiny to classifications involving bail (see *Schilb v. Kuebel* (1971), 404 U.S. 357, 30 L. Ed. 2d 502, 92 S. Ct. 479), and the rights of prisoners, but has declined to do so.

See *Jones v. North Carolina Prisoners' Labor Union, Inc.* (1977), 433 U.S. 119, 134, 53 L. Ed. 2d 629, 644, 97 S. Ct. 2532, 2543;*Estelle v. Dorrough* (1975), 420 U.S. 534, 43 L. Ed. 2d 377, 95 S. Ct. 1173; *McGinnis v. Royster* (1973), 410 U.S. 263, 35 L. Ed. 2d 282, 93 S. Ct. 1055; *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 22 L. Ed. 2d 739, 89 S. Ct. 1404.

However labeled, our assessment of the impact of a classification is inevitably subsumed in our analysis of its reasonableness. Illinois has enacted a comprehensive statute providing the grounds for and incidents of particular sentences, including incarceration, probation, conditional discharge, and supervision. Parolees are, by definition, individuals who originally were sentenced to a period of imprisonment. See Ill. Rev. Stat. 1975, ch. 38, par. 1005—1—16.

That an individual originally was sentenced to imprisonment required the sentencing court to have been of the opinion that, "having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, *** (1) his imprisonment is necessary for the protection of the public; or (2) the offender is in need of correctional treatment that can most effectively be provided by a sentence to imprisonment; or (3) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a).

These factors distinguish parolees from probationers. That a brief period of imprisonment or a periodic imprisonment may be made a condition of probation does not alter our conclusion. Probation, however conditioned, is unlike parole, in that the probationer, unlike the parolee, may be released without a subsequent finding of rehabilitation. *Cf.* Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5.

Thus parolees, even though later conditionally re-

leased, were originally adjudged in need of immediate commitment to the Department of Corrections, either for their own good, or for the good of society. Similarly, the legislature has concluded that, even after a subsequent conditional release on parole, persons who originally were found to be in need of immediate commitment (as opposed to probation) also are in need of immediate recommitment, without bail, when a parole violation warrant has issued. That conclusion is a reasonable one, which is rationally related to the State's legitimate interest in protecting the public through the incarceration of those for whom incarceration is appropriate, while at the same time not wasting the taxpayers' money and retarding the rehabilitation of offenders through unnecessary incarceration. Accordingly, the statute may be construed, and we do so construe it, to deny bail to persons accused of violating conditions of their parole, without thereby denying such persons the equal protection of the laws.

Having held that bail is unavailable to accused parole violators, we are not indifferent to the plight of the individual who is permitted to languish in jail while the parole board awaits a decision in the trial on the underlying criminal charge. Accordingly, as stated in *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 177, *mandamus* will lie to enforce the accused parole violator's right to a reasonably prompt final revocation hearing. See also *Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.

While it is true that matters, such as the grant, denial or revocation of parole, which have been allocated to the discretion of an administrative agency are within the jurisdiction of the circuit court only to the extent provided by law (Ill. Const. 1970, art. VI, sec. 9), it is equally true that when the agency abdicates its discretion, "[m]andamus is an appropriate remedy to compel a public officer to exercise the discretion vested in him." *People ex rel. Abner v. Kinney* (1964), 30 Ill. 2d 201, 207.

Here, the parole board's apparent decision to permit Patterson to languish in jail pending the outcome of his trial on the underlying charges appears to be such an abdication. That he may eventually vindicate himself in that trial does not undo the damage done by his current incarceration. The framers of our constitutions have twice rejected attempts to permit "preventive detention" of persons suspected of crimes. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1656 (hereinafter cited as Proceedings); G. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 33 (1969). See also E. Gertz, For the First Hours of Tomorrow: The New Illinois Bill of Rights 89 (1972); 6 Proceedings 36.) Even though a parole violation warrant is a post-conviction matter clearly not constituting "preventive detention" (see *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 174) if used solely for the purpose of detaining persons without bail prior to trial, it contravenes the spirit of our constitution.

Similarly, we are also unpersuaded of the soundness of the State's argument that the parole board's abdication of its duties in favor of the circuit court's trial on the underlying criminal charge actually helps the prisoner. The State claims that, because he has the benefit of more procedural safeguards in the circuit court than before the parole board, the accused parole violator ultimately is not hurt.

Again, the loss of liberty is irreparable, and the prisoner's right to a reasonably prompt final revocation hearing is not so easily circumvented. Of course, not all delays, and not even all delays pending trial (*e.g.*, an immediate misdemeanor trial) are unreasonable. (*Cf. In re Law* (1973), 10 Cal. 3d 21, 513 P. 2d 621, 109 Cal. Rptr. 573.) We need not speculate as to what constitutes unreasonable delay in a given case, and we will not presume to preempt the crucial fact-finding function and sound discretion of the circuit courts in this matter. In this

case it was unreasonable, however, for the parole board to abdicate its discretion by refusing to act for several months while the incarcerated defendant awaits trial.

For the foregoing reasons, the judgment of the appellate court in cause No. 49059 is affirmed as to Denson and vacated as moot as to Tucker, and the cause is remanded to the circuit court of Cook County for a consideration of mootness and for such further proceedings as are not inconsistent with this opinion. The judgment of the appellate court in cause No. 49235 is affirmed, and the cause is remanded to the circuit court of Cook County for a consideration of mootness and for such further proceedings as are not inconsistent with this opinion.

> *49059 — Affirmed in part and vacated in part and remanded, with directions.*
>
> *49235 — Affirmed and remanded, with directions.*