NO. 4-02-0275

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: JILL R., Alleged to be a Person Subject to Involuntary Admission and the Involuntary Administration of Psychotropic Medication,

THE PEOPLE OF THE STATE OF ILLINOIS,

Petitioner-Appellee,

v.

JILL R.,

Respondent-Appellant.

)

)

)

)

)

))))

Appeal from

Circuit Court of

Macon County

No. 02MH13

Honorable

Scott B. Diamond,

Judge Presiding.

_________________________________________________________________

MODIFIED UPON DENIAL OF REHEARING

JUSTICE KNECHT delivered the opinion of the court:

Respondent, Jill R.,
 appeals the March 2002 order of the trial court 
finding her subject to involuntary admission to a mental health facility pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-600 (West 2000))
 and involuntary administration of psychotropic medication pursuant to section 2-107.1(a-5) of the Code (405 ILCS 5/2-107.1(a-5) (West Supp. 2001)).  Respondent contends (1) the trial court lacked subject-matter jurisdiction, (2) the trial court lacked personal jurisdiction
, (3) the trial court abused its discretion in denying her motion for a two-day continuance,
 (4) she was prejudiced when neither she nor her attorney received notice of the hearing, (5) the trial court's order for involuntary administration of psychotropic medication was against the manifest weight of the evidence
, (6) the trial court should not have authorized medical tests, and (7) the petition did not state the petitioner made a good-faith effort to determine whether respondent had executed a health care power of attorney or a declaration for mental health treatment.  We reverse.

I. BACKGROUND

On March 17, 2002, respondent was admitted to St. Mary's Hospital (St. Mary's) in Decatur, Illinois.  
The next day, Jon Scharfenberg, respondent's brother, filed a petition for emergency involuntary admission of respondent to a mental health facility.  The petition alleged respondent had been hospitalized in February 2002 after she heard God tell her to set fire to her home in St. Charles, Missouri.  Two certificates were attached to the petition.  Stephen Rathnow of St. Mary's filed a petition for administration of psychotropic medication.

In a March 20, 2002, order filed on April 4, 2002, the trial court (1) set a hearing on the involuntary admission petition for 8:30 a.m. on March 20, 2002, (2) ordered the clerk to send notice to all required persons, and (3) appointed counsel to represent respondent.  Respondent received actual notice of the hearing and appeared with counsel, who did not object to any lack of formal notice in the record.

The trial court first held a hearing on the petition for involuntary admission.  At the outset, respondent's attorney made an oral motion for a two-day continuance to file a motion to dismiss and obtain supporting affidavits.  He represented the following to the trial court:  respondent's parents, Don and Peggy Scharfen­berg
, invited respondent to visit them in Macomb, Illinois, and they drove to visit Jon in Decatur, where Jon petitioned for respondent's admission.  The trial court denied the motion for a continuance. 

Respondent's counsel then made an oral motion to dismiss.  Respondent testified she was arrested after her home burned and was out on bond.  Respondent had an auto accident while en route to visit her parents at their invitation.  Don and Peggy drove respondent to Decatur to pick up Jon, and they told respondent they were taking her to the hospital to see if she was okay after the accident.  Respondent also stated she had been taking her medications after being discharged in Missouri.  Respondent's attorney argued respondent was lured to Macon County and could not obtain evidence from Missouri.  The trial court denied the motion to dismiss because respondent was present in Macon County.

The State then presented testimony from Peggy, Don, and Jon, as well as Dr. Rohi Patil.  Respondent quit her job as a nurse to work at home through the Institute for Global Prosperity after receiving a message from God.  Respondent stopped taking her medication.  
Peggy and Don supported respondent for about a month after her release from a mental health facility. 
 She then left the motel in which she was staying and was moving home when she wrecked her truck.  Respondent told Peggy she would "do something off a high place" if God asked her.  Respondent also informed Peggy she stares at the sun and keeps her eyes open in a tanning salon to converse with God.  Respondent told Jon "she had tried to blow up her house before and she would do it again if that is what it took to get her message out."

Dr. Patil, a psychiatrist, examined respondent and diagnosed her with a bipolar disorder.  If untreated, respondent's prognosis would be very poor because she goes into spells of psychotic symptoms, paranoia, and delusions.  Dr. Patil opined respondent could harm herself or others.  Respondent told Dr. Patil she stopped taking medicine because she wanted to be free again.  The trial court relied only on Dr. Patil's testimony and found by clear and convincing evidence respondent was in need of involuntary admission.  The trial court ordered her hospitalized in the Department of Human Services (Department) for a period not to exceed 90 days.

The State next proceeded on the petition for administration of psycho­tropic medication.  Dr. Patil again testified respondent refused to comply with medication because she said she was free by not taking it.  Dr. Patil recommended up to 20 milligrams per day of Zyprexa, an antipsychotic and mood stabilizer, 25 milligrams per day for two weeks of Prolixin Decanoate, an antipsychotic, 500 milligrams twice per day of Depakote, a mood stabilizer, and up to 450 milligrams per day of Wellbutrin, an antidepressant.  Dr. Patil discussed only Wellbutrin and Zyprexa with respondent.  He was concerned about respondent's compliance with medication because she has refused in the past.  Respondent was psychotic and her ability to function had deteriorated without the medication, which would allow her to be a productive human being.  Her mental illness existed for a period of time marked by the continuing deterioration of her ability to function.  Dr. Patil believed the benefits of the medication would outweigh the harm.  Dr. Patil had tried other less restrictive services without success, and he believed respondent lacked the capacity to make a reasoned decision about the treatment.  The trial court granted the petition.

This appeal followed.

II. ANALYSIS

A. Subject-Matter Jurisdiction

Respondent first argues the trial court lacked subject-matter jurisdiction because, according to her multidisciplinary treatment plan, she had been charged with a felony.  We note the record does not specify which jurisdiction charged her with a felony, although respondent had been jailed in Missouri and released on bond. 
 Respondent does not contend she had an Illinois felony charge, and nothing in the record suggests otherwise.  
Therefore, we consider whether respondent's out-of-state felony charge deprived the circuit court of jurisdiction under section 3-100 of the 
Code (405 ILCS 5/3-100 (West 2000)), which provides:

"The circuit court has jurisdiction under this [c]hapter over persons 
not
 
charged
 
with
 
a
 
felony
 who are subject to involuntary admission.  Inmates of penal institutions shall not be considered as charged with a felony within the meaning of this [c]hapter.  Court proceedings under [a]rticle VIII of this [c]hapter may be instituted as to any such inmate at any time within 90 days prior to discharge of such inmate by expiration of sentence or otherwise, and if such inmate is found to be subject to involuntary admission, the order of the court ordering hospitalization or other disposition shall become effective at the time of discharge of the inmate from penal custody.
"  (Emphasis added.)

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent, and we first look to the statute's language, according that language its plain and commonly understood meaning
.  
People v. Ellis
, 199 Ill. 2d 28, 39, 765 N.E.2d 991, 997 (2002). 
 We may also properly consider the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved.  
In re Detention of Lieberman
, 
201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002).

Although we may not ordinarily depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express (
Ellis
, 199 Ill. 2d at 39, 765 N.E.2d at 997)
, we also presume the General Assembly did not intend absurdity, inconvenience, or injustice in its enactment of legislation
 (
Lieberman
, 
201 Ill. 2d at 309, 776 N.E.2d at 224
).  Where the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, we are not bound by the literal language of a particular clause that would defeat the obvious intent of the legislature. 
 
Lieberman
, 201 Ill. 2d at 312, 776 N.E.2d at 225-26
.
  In those exceptional situations where adherence to the literal language of the statute would produce a result clearly and demonstrably at odds with the obvious intent of the General Assembly, we may disregard, modify, or supply language to give effect to the legislative design.  
Lieberman
, 
201 Ill. 2d at 320, 776 N.E.2d at 230
.

In enacting civil involuntary admission procedures, the General Assembly attempted to further society's interests in protecting itself from dangerous mentally ill persons and caring for those who are unable to care for themselves.  
In re Rovelstad
, 281 Ill. App. 3d 956, 964, 667 N.E.2d 720, 725 (1996).  However, w
hen the State charges a mentally ill person with a felony, that person comes within the authority of the Illinois criminal justice system.  
People v. Zahn
, 71 Ill. App. 3d 585, 589, 390 N.E.2d 93, 96 (1979)
.  Section 3-100 of the Code reflects the General Assembly's decision to initially assert criminal jurisdiction over mentally ill felony defendants.  See 
Zahn
, 71 Ill. App. 3d at 589, 390 N.E.2d at 96
.  
Felony defendants who are found unfit to stand trial may be treated by the Department under the procedures in the Code of Criminal Procedure of 1963 (see 725 ILCS 5/104-13 through 104-31 (West 2000)).

We recognize the trial court would be without jurisdiction to involuntarily admit respondent
 if section 3-100 of the Code is construed according to the plain meaning of its language.  However, we find the clearly expressed intent of the General Assembly would be frustrated and injustice would result if, as a result of an out-of-state felony charge,
 the trial court were deprived of jurisdiction to involuntarily admit a person such as respondent.  Until the person has committed an offense subject to prosecution in this state
, Illinois would have no criminal jurisdiction, either.  See 720 ILCS 5/1-5 (West 2000).
  The State would then have no power to protect its citizens from such dangerous mentally ill persons and no authority to assert its significant 
parens
 
patriae
 
interest in providing for those who are unable to take care of themselves.
  This result would be clearly and demonstrably at odds with the obvious intent of the General Assembly to assert civil commitment jurisdiction 
over all persons present in this state who are subject to involuntary admission unless this state asserts felony criminal jurisdiction.  Therefore, 
we supply language to give effect to the legislative design and interpret section 3-100 to grant the trial court civil commitment jurisdiction over persons who are present and subject to involuntary admission and who are not charged 
by
 
this
 
state
 with a 
felony.

Respondent does not contend this state has charged her with a felony, and she
 was subject to involuntary admission because she had a mental illness and because of her illness was reasonably expected to inflict serious physical harm upon herself or another in the near future and/or was unable to provide for her basic physical needs so as to guard herself from serious harm.  
See 405 ILCS 5/1-119 (West 2000).  Therefore, the trial court had subject-matter jurisdiction pursuant to section 3-100 of the Code.

B. Motion To Continue

Respondent asserts the trial court lacked personal jurisdiction over her because she was a Missouri resident and her family lured her into Illinois to get treatment.  
Respondent also contends the trial court abused its discretion in denying her motion for a two-day continuance
 to prepare a motion to dismiss and obtain supporting affidavits.  The grant or denial of a motion for a continuance is within the trial court's sound discretion.
  
In re Bert W.
, 313 Ill. App. 3d 788, 793, 730 N.E.2d 591, 596 (2000).

Illinois courts may exercise jurisdiction in any action arising within or without this state against any natural person present within this state when served with process.  735 ILCS 5/2-209(b)(1) (West 2000).  However, a party may not be induced by artifice, trick, or fraud to enter the state for the sole purpose of being served with process.  See 
In re Marriage of Pridemore
, 146 Ill. App. 3d 990, 993, 497 N.E.2d 818, 820 (1986).

Although the trial court entertained an oral motion to dismiss based on a lack of personal jurisdiction, the trial court limited respondent's ability to fully present her claim by denying her counsel's request for a two-day continuance to prepare and obtain affidavits.  The
 trial court proceeded with the hearing only two days after the petition for involuntary admission was filed, and respondent's counsel had limited time to prepare
 a motion to dismiss on jurisdictional grounds. 
 In ruling, the trial court simply stated, "the respondent is here.  It is alleged she is a seriously ill person."
 
 In the unusual facts of this case, the trial court abused its discretion in denying respondent's motion for a continuance.

C. Notice

Respondent next contends she was prejudiced when neither she nor her attorney received notice of the hearing
, as required by section 3-611 of the Code (405 ILCS 5/3-611 (West 2000)).

We recognize a compelling need for strict compliance with statutory requirements in mental health cases because commitment is involuntary and liberty interests are involved.  
In re Lanter
, 216 Ill. App. 3d 972, 974, 576 N.E.2d 1219, 1220 (1991).
  However, when the respondent does not object and does not show prejudice, the State's failure to strictly comply with provisions of the Code
 
may be excused if the record establishes the purposes of the statute have been achieved.  
In re Robinson
, 151 Ill. 2d 126, 131, 601 N.E.2d 712, 715 (1992).
  The purposes behind the notice requirement are to afford respondent time to prepare for the hearing and an opportunity to be heard.  
In re Nau
, 153 Ill. 2d 406, 418, 607 N.E.2d 134, 140 (1992).

In this case, respondent and her counsel were present at the hearing, participated in the proceedings, and failed to raise any challenge to the notice of the proceeding.  Therefore, the purposes of the notice provision were fulfilled, and respondent was not prejudiced by the lack of an affirmative indication in the record she was properly served with formal notice of the time and place of the proceeding.  We consider this error to be harmless.  
In re McMahon
, 221 Ill. App. 3d 383, 387, 581 N.E.2d 1208, 1211 (1991).  

D. Capacity To Make a Reasoned Decision About Medication

Respondent argues the trial court's order for involuntary administration of psychotropic medication was against the manifest weight of the evidence.  Respondent contends the State failed to prove by clear and convincing evidence she lacked the capacity to make a reasoned decision about medication because the State failed to present any proof she was informed of the risks and benefits of the medication in writing.  We 
disagree
.

 Rathnow's signed petition for involuntary administration of psychotropic medication alleged respondent had been delivered a written statement advising her of the benefits and side effects of the medication.  The multi­disciplinary treatment plan
, which the trial court admitted into evidence as People's exhibit No. 2
, contains the following signed statement:  "I have discussed benefits and potential side effects of medications with patient and/or family as appropriate and have provided written information to them.  I have also informed patient his/her right to refuse medication."

At the hearing, Dr. Patil testified respondent lacked the capacity to make a reasoned decision about medication.  Respondent was psychotic, and she refused medication because she said she wanted to be free and God told her not to take the medicine.  The trial court's finding respondent lacked the capacity to make a reasoned decision about medication
 was not against the manifest weight of the evidence.

E. Medical Testing

Respondent claims the trial court should not have authorized medical tests when the petition did not request testing and no testimony showed testing was essential for the safe and effective administration of medication.

The trial court had authority to order medical testing even though not requested in the petition for involuntary admission of psychotropic medication.  Under the doctrine of 
parens
 
patriae
, courts have the implied authority to order periodic blood testing to ensure the safe administration of psychotropic drugs, provided the requirements of section 2-107.1 of the Code are met by clear and convincing evidence.
  
In re Floyd
, 274 Ill. App. 3d 855, 864, 655 N.E.2d 10, 15 (1995).

F. Form of Petition for Administration

of Psychotropic Medication

Finally, respondent asserts the petition did not state the petitioner made a good-faith effort to determine whether respondent had executed a health care power of attorney or a declaration for mental health treatment.
  As we decided in 
In re Miller
, 301 Ill. App. 3d 1060, 1071, 705 N.E.2d 144, 151 (1998), the error is harmless because neither the record before us nor respondent in her brief indicates such instruments actually existed in this case.

 
 
 
 III. CONCLUSION

Because the trial court abused its discretion in denying respondent's motion for a continuance, we reverse the trial court's judgment.

Reversed.

COOK and APPLETON, JJ., concur.