JUSTICE MYERSCOUGH, dissenting: I respectfully dissent. I would affirm because the trial court did not abuse its discretion in authorizing administration of involuntary treatment. The common-law record includes the signed petition for administration of authorized involuntary treatment and a treatment plan that states respondent had been delivered a written notice of the risks and benefits of the proposed treatment. “I have read and understood this [pjetition and affirm that the statements made by me are true to the best of my knowledge. I affirm that I advised the individual, in writing, of the risks and benefits of the proposed treatment.” That notice alone is sufficient compliance with section 2 — 102(a—5) (405 ILCS 5/2 — 102(a—5) (West 2004)). See In re Jill R., 336 Ill. App. 3d 956, 964, 785 N.E.2d 47, 52 (2003) (petition and treatment plan indicated written notice given was sufficient compliance). Unfortunately, in the case sub judice, the signature is illegible, but the individual’s address is listed as Vine Street Clinic. Perhaps this affirmation was signed by Dr. Tabatabai, perhaps not. Regardless, the facts of this case show sufficient compliance with section 2 — 102(a—5) (405 ILCS 5/2 — 102(a—5) (West 2004)). The majority and special concurrence not only disregard the written-notice affirmation but also the court-ordered written notice and the repeated oral notices; and they effectively emasculate the language in the Act that requires written notice only “to the extent such advice is consistent with the recipient’s ability to understand the information communicated” (405 ILCS 5/2 — 102(a—5) (West 2004)). Respondent clearly exhibited an inability to understand the information communicated. Concededly, the supreme court reversed this court on the written-notice requirement in Steven P., 207 Ill. 2d 604, 801 N.E.2d 947, in a terse supervisory order. However, this appellate court had based its decision on the respondent’s forfeiture of the written-notice requirement. The record was silent on any written or oral attempts to notify the respondent of the medication’s side effects. Moreover, the supervisory order specifically exercised its supervisory authority “in light of the People’s factual and legal concessions,” to which this court is not privy. In re Steven P., 207 Ill. 2d at 604, 801 N.E.2d at 947. Moreover, supervisory orders are not precedential. “As the State pointed out, supervisory orders are unpublished, recite no facts, and provide no rationale upon which the principles of stare decisis may attach.” People v. Jackson, 154 Ill. App. 3d 320, 324, 507 N.E.2d 89, 91 (1987). Our record is not so silent. Not only was the written notice affirmed, but Dr. Tabatabai also testified he and his staff had verbally notified respondent of the potential side effects on numerous occasions. “Q. To your knowledge, have they been given to her in writing? A. No. I have given these to her verbally on numerous occasions during this stay.” (Certainly, if the affirmation of written notice was actually signed by Dr. Tabatabai, he contradicted that affirmation here.) Dr. Tabatabai further indicated respondent had a general understanding of what was being discussed but respondent replied “John-John” (Kennedy, Jr.) did not want her to take the medication. (Respondent also interjected John Kennedy, Jr., had her power of attorney for health care and that he was still alive.) Respondent did indeed on occasion consent to take her medications. But Dr. Tabatabai also testified respondent’s capacity fluctuates over time. However, both Dr. Tabatabai and respondent agree respondent lacked the capacity to give informed consent. “Q. When you had a discussion of the possible side effects, did she show an understanding of what you were discussing? A. General understanding, yes. Q. Was she able to provide input concerning the medication? A. Simply that she prefers not to take any medicine because John doesn’t want her to. Q. In your opinion, Doctor, does the patient have the capacity to make a reasoned decision regarding whether or not to take the medication? A. No.” And, once again, respondent was advised about the risks and benefits of the medications by staff. “Q. Did she have capacity yesterday when she gave you informed consent? A. She didn’t give the informed consent. We have a standing order with the staff to approach her with medication, and if she agrees to take the medication with the understanding of the risks of and benefits, that she can take it. Q. And that has been a standing order ever since she’s been here? A. Yes, correct. Q. So, it’s up to her to make the decision whether to take the medications or not, correct? A. Correct. Q. And you’ve allowed that to happen? That’s been the status quo since she’s been here? A. Yes.” Moreover, the trial court here directed staff to give respondent written notice in open court. Perhaps the court should have duly noted on the record compliance with that directive, but the court based its opinion on its observations of respondent and her apparent absence of the capacity to make a reasoned decision, rendering that written notice superfluous. Further, the majority’s and special concurrence’s strict compliance with written notice is not mandated by the statute or in Steven P. where, as here, the respondent exhibited an inability to understand the written information. Finally, I must comment on the majority’s and special concurrence’s unrealistic view of mental-health commitment proceedings. Having prosecuted mental-health commitment proceedings and presided over them for a period of 12 years, I find the criticism of all the public servants involved in these emotional proceedings unwarranted. The proceedings are conducted at the mental-health facilities under crowded, hurried conditions for the benefit of the patient. All involved are concerned with the best interests of a very fragile patient. The continued strict statutory construction — stricter than that required by statute in fact — is a detriment to both the patient and the medical and legal establishments. For these reasons, I would affirm the trial court and commend all involved for their public service in the treatment of the mentally ill.