THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DOUGLAS DEES, Defendant-Appellee.
Fourth District  No. 15590

Opinion filed February 11, 1980.

GREEN, J., dissenting.

Paul C. Komada, State's Attorney, of Charleston (Marc D. Towler and Karen Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Warrantless arrest.

Delay of 14 days before arraignment.

Motion to dismiss for denial of due process.

Allowed—*without* leave to refile.

We affirm.

On February 15, 1979, defendant Dees was arrested without a warrant and charged by information with resisting a police officer and escape, both offenses being misdemeanors. Since the defendant was on parole at the time he was arrested, the Illinois Department of Corrections issued a warrant on the same day based on these charges.

The case was called for arraignment on March 1, 1979, and defendant

was furnished with a copy of the information. He declined appointment of counsel and entered a plea of not guilty, demanding a jury trial. Bond was set at $1,000.

Defendant filed a "motion to be discharged from custody," claiming that the delay between his arrest and being brought before the court constituted a violation of sections 107—14 and 109—1 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1977, ch. 38, pars. 107—14, 109—1.) The court denied the motion, noting that the State was required to hold the defendant under the Department of Corrections warrant. Defendant then requested the appointment of counsel.

Defense counsel then filed a motion to dismiss, claiming that the delay was a denial of due process and a violation of section 109—1.

After a hearing, the trial court found that the provisions of section 109—1 are mandatory and that a failure to comply with the mandates of that statute constitutes a denial of due process of law. The court also found that the defendant had been actually and substantially prejudiced by the delay. The court noted that a judge had been available every working day during the 14-day period and that the State was unable to provide any explanation for the delay. Finally, the court found that it had the inherent power to dismiss a case without leave to reinstate where there has been a violation of defendant's rights resulting in a denial of due process of law, as in the instant case.

The State now appeals, claiming that defendant's due process rights were not violated because he was not prejudiced by the delay and, even if his rights were violated, the trial court's remedy was inappropriate.

## DUE PROCESS

The fifth amendment to the United States Constitution proclaims that no person shall be deprived of life, liberty, or property without due process of law. This basic right is made applicable to the States via the fourteenth amendment to the United States Constitution. In Illinois this right is also set forth in article I, section 2, of the Constitution of 1970.

The term due process is a vague concept which does not readily lend itself to a precise definition. In its most basic sense, however, it is the protection of the individual from arbitrary action. (*Ohio Bell Telephone Co. v. Public Utilities Com.* (1937), 301 U.S. 292, 302, 81 L. Ed. 1093, 1100, 57 S. Ct. 724, 729.) While it is true that all rights and privileges are not protected by due process of law, it is well established that no right is held more sacred than the right of an individual to be free from all restraint of interference unless by clear and unquestionable authority of law.

The trial court found that a violation of the statute was also a *per se* violation of due process. With this finding, however, we disagree.

Section 109—1(a) provides in its pertinent part:

"A person arrested without a warrant shall be. taken without unnecessary delay before the nearest and most accessible judge in that county, and a charge shall be filed." Ill. Rev. Stat. 1977, ch. 38, par. 109—1(a).

The Committee Comments to this section state that it "conforms in general with the provisions of Federal Rule 5(a)." Ill. Ann. Stat., ch. 38, par. 109—1, Committee Comments, at 282 (Smith-Hurd 1970).

Our examination of Federal Rule 5(a) reveals, however, that it was promulgated in pursuance of the United States Supreme Court's supervisory power over Federal prosecutions and is not a Federal constitutional requirement. See, *e.g.*, *Delaney v. Gladden* (9th Cir. 1968), 397 F.2d 17, 20, *cert. denied* (1969), 393 U.S. 1040, 21 L. Ed. 2d 585, 89 S. Ct. 660.

Since section 109—1 is not based on the Federal due process clause, it is similarly not based upon the Illinois due process clause since they guarantee the same basic rights. See Ill. Ann. Stat., art. I, §2, Ill. Constitution 1970, Constitutional Commentary, at 109 (Smith-Hurd 1971).

■■ In declaring that a violation of section 109—1 is not a *per se* violation of due process, we are not saying that a 14-day detention following a warrantless arrest could not constitute a violation of due process. To the contrary, we believe that the defendant in the present case has been denied his rights under the Illinois and the United States constitutions.

In 1942, the United States Supreme Court had occasion to discuss the policies behind a prompt presentation before a magistrate. In *McNabb v. United States* (1942), 318 U.S. 332, 343, 87 L. Ed. 819, 825-26, 63 S. Ct. 608, 614, Mr. Justice Frankfurter stated:

"The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The lawful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication."

While it is true that *McNabb* was premised on a Federal statutory right and is therefore not controlling, the same interests discussed by the court in 1942 are still relevant today.

The purposes behind a prompt presentation before a magistrate can be garnered from an examination of section 109. Once an accused is presented, the judge is required to inform the defendant of the charges against him, advise him of his right to counsel, admit him to bail if appropriate, and in certain cases conduct a preliminary hearing. These basic fundamental rights are of little value if the prosecution is permitted to arbitrarily delay such rights for 14 days.

During the hearing on the motion, the trial court offered the State the opportunity to explain the delay:

> "COURT: Why couldn't he have been brought before the court then, if the charges were filed on the 15th?
>
> MR. HOBLER: I don't know, Your Honor. Regardless of whether or not he could have been brought before the court, I don't think it makes—there is no prejudice shown in this case, Your Honor."

It is therefore uncontradicted that the delay was unexplained.

The State argues here that defendant has not shown any prejudice because he could not have been admitted to bail due to the parole violation warrant. (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 368 N.E.2d 903.) But this argument is without merit.

The trial court grappled with this question:

> "MR. HOBLER: [I]n this case, Your Honor, I would suggest again that there was no prejudice at all to the Defendant because he was in jail then, and is in jail now, because of a Department of Corrections parole hold.
>
> COURT: Well, it's getting to the point as to which came first—the chicken or the egg. This man has been jerked up and placed in jail, he wasn't brought before this court for an arraignment from February 15th until March 1st, and then he was brought before the court on that date, and then the parole hold people—they're insisting that he be kept in jail without any bond?
>
> MR. HOBLER: What would have happened, Your Honor, if he had been brought on the 16th of February before the court? What would have happened was the court would have set bond as the court did on March 1st—set bond and ordered him, if he pled not guilty and demanded a jury trial, to post bond in the amount of $1,000. If that had been done the next day, Your Honor, the 16th of February, he would still be in jail on the parole hold right now. There is no prejudice to the Defendant.
>
> COURT: There is prejudice to this Defendant, because he hasn't been convicted of this offense. He hasn't been convicted of any offenses involved in the instant case. Now, that's a fact, is it not?
>
> MR. HOBLER: He's not been convicted—no."

We agree with the trial court.

First of all, the parole warrant was based on the same acts which prompted the information. While the determinations on the criminal charge and the parole violation are performed independently, the offenses in this case are identical and therefore a swift determination of the criminal charge would have an obvious effect upon the parole violation proceedings.

Additionally, the fact that the defendant was unable to obtain immediate release does not abrogate his right to know the nature of the charges against him. It is inconceivable that an accused would be able to present a defense to a criminal charge of which he has not been advised. The unexcused delay of 14 days prior to presentment provides a sufficient hindrance to defense efforts so as to prejudice defendant's rights.

■■ Under the facts of this case, we feel that the trial court correctly determined that defendant's right of due process was violated—resulting in actual and substantial prejudice.

## REMEDY

As a final point, the State argues that the trial court's action— dismissing the information without leave to refile—was inappropriate. After noting that section 109—1 provides a right to the defendant of prompt presentment, the State notes that the legislature has not provided a remedy. The State then draws an analogy to article I, section 7, of the Illinois Constitution of 1970, which guarantees a right to a prompt preliminary hearing in felonies. The State claims that the Illinois courts have repeatedly stated that since no legislative remedy for the violation of a prompt preliminary hearing was prescribed, a defendant is not entitled to dismissal of the charges, or a reversal of a conviction, for a violation of this right. *People v. Hendrix* (1973), 54 Ill. 2d 165, 296 N.E.2d 724; *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Savage* (1973), 12 Ill. App. 3d 734, 298 N.E.2d 758.

In rejecting the State's contention, we note that at least one court has taken it upon itself to fashion a remedy for a violation of article I, section 7. (*People v. Kirkley* (1978), 60 Ill. App. 3d 746, 377 N.E.2d 540.) Were we to sit idly by and ignore the unexplained infringement upon the defendant's basic human rights due to the inaction of the legislature, we would be betraying the concept of the independent judiciary designed to protect against arbitrary unconstitutional actions  by other branches of government.

In *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, the trial court dismissed indictments due to delays between the alleged acts and the indictments. On appeal, the State argued that the trial court was without authority to dismiss an indictment, information, or complaint on

the basis of a denial of due process. In rejecting this contention, Mr. Justice Clark, speaking for the entire court, stated:

> "Because the trial court has the obligation to insure a fair trial, it would seem only reasonable that, where there has been an unequivocally clear denial of due process such as actual and substantial prejudicial delay before an indictment or arrest, the trial court has the inherent authority to dismiss. Due process is a fundamental premise of our system of justice and is constitutionally guaranteed by the fourteenth amendment. It does not need enabling legislation." 67 Ill. 2d 449, 456, 367 N.E.2d 1244, 1247. See also *People v. Shields* (1978), 60 Ill. App. 3d 493, 377 N.E.2d 68.

■■ In holding that the trial court has the power to dismiss the indictment, we find it particularly significant that there was no other available remedy in the present situation. In the vast majority of cases dealing with a violation of section 109 or due process stemming from a delay in presentation, a confession was taken in the interim period. Defendants have frequently argued that a confession is inadmissible when taken during the period of illegal detention. This is the *McNabb* rule and it has been consistently rejected in this State. (See, *e.g.*, *People v. Jackson* (1961), 23 Ill. 2d 274, 178 N.E.2d 299.) Our holding here is in no way intended as an acceptance of such rule.

The instant case presents the unique situation where a confession was not obtained during the period of the delay. Thus, a suppression of evidence is both an inappropriate as well as unavailable remedy. Indeed, we are faced with the situation where the remedy is either dismissal of the information or there is no remedy at all. Having determined that the trial court had the discretion to dismiss the information, we are not prepared to say that the trial court here has abused this discretion.

The dissent assembles a number of important considerations. We are not entirely unsympathetic to the views expressed therein.

It is asserted in the dissent that a rule which is based upon the severity of the offense is unworkable. We do not claim to set down such a rule. Our result is, however, prompted by the fact that the instant offenses were misdemeanors. It is not at all unlikely that a defendant would receive a sentence upon an adjudication of guilt of less than 14 days on a misdemeanor charge. The defendant here, however, did have at least one prior conviction. But even a prior conviction does not justify summary punishment.

The dissent further notes the prophylactic effect of our ruling and likens it to the exclusionary rule, asking what if the defendant had been a murderer. We are not faced with that situation. We are confronted only with misdemeanors. Nor are we condoning all applications of the

exclusionary rule, which has been the subject of considerable comment and criticism in recent times.

It is true, however, that the remedy in the instant case is prompted by prophylactic purposes. It is designed to deter arbitrary, illegal conduct by law enforcement officials. At some time the power which our society vests in these individuals must be held in abeyance. Were we to follow the position taken by the dissent, there would be nothing to prevent the defendant, arrested without a warrant, being held until Armageddon arrives!

## CAVEAT

Finally, we emphasize that our holding is limited to the facts of this case. It cannot be said that every delay of 14 days constitutes a denial of due process. Had there been a legitimate reason for the delay, our holding may have been different. (Indeed, the trial judge offered the State an opportunity to explain the inordinate delay, but none was given.)

*Ergo*, where there was a delay of 14 days between a warrantless arrest and a presentation before a judge; where judges were available on every working day; where the defendant was incarcerated during this period; where the State was unable to provide an explanation for the delay; and where the defendant suffered actual and substantial prejudice—the trial court properly dismissed the information without leave to refile.

*The decision of the trial court is hereby affirmed.*

Affirmed.

CRAVEN, J., concurs.

Mr. JUSTICE GREEN, dissenting:

As noted by the majority, the rights of defendant which were violated here by the unreasonable delay in bringing him before a judicial officer concerned his opportunity to prepare his defense and his liberty. In *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, the State's delay of nearly a year in bringing charges against an accused deprived him of knowledge during that time of the charges he was going to be required to meet. However, the supreme court held this to be insufficient grounds to bar action against him unless he could show that he was actually and substantially prejudiced in the preparation of his defense. Had those requirements been met and had the State been unable to show a valid reason for the delay, the purpose of barring action would have been to prevent a possibly innocent person from being convicted. Although any delay in informing an accused of the charges he is to face is something of

a hindrance to preparation of his defense, no evidence was presented here which showed that the defendant was actually and substantially prejudiced in his defense by the delay. Had he needed more time to prepare for trial, the court could have given him a continuance.

In *Lawson*, the defendant was at liberty during the delay before the charge was made. Here, defendant was incarcerated during the delay and was deprived of the opportunity to make bond during this time. His significant deprivation was that of liberty, a most important one. However, that liberty for that time can never be restored to him. The purpose of imposing the sanction of barring the charge was not to prevent the likelihood of an innocent person being convicted. Rather, as stated by defendant, it is for the prophylactic purpose of discouraging law enforcement officers from imposing similar deprivations on others. The sanction is akin to the exclusionary rule whereby evidence that may be highly probative of a defendant's guilt but wrongfully obtained is excluded in order to discourage law enforcement officers from obtaining evidence in the future in a manner which deprives persons of their constitutional rights.

I am reluctant to concur in creating, by judicial fiat, a procedure permitting a trial court to completely bar criminal charges against a defendant who may well be guilty, merely to deter improper or careless conduct by law enforcement officers. The barring of the charges here may not be too great a price to pay to invoke an effective deterrent, but what if the defendant were a likely dangerous person charged with a vicious murder? Would we then uphold a trial court that barred those charges for prophylactic reasons because the defendant had been improperly deprived of liberty for 14 days? A rule permitting or refusing a dismissal in bar of action of the charges depending upon the severity of those charges barred and the likely danger to society of the accused would be most difficult to apply.

The majority opinion states that it is not adopting the rule referred to in the previous paragraph. Nevertheless it indicates that it is not approving dismissal when the charges are serious, and it gives consideration to the fact that the instant offense was a misdemeanor. What is the criterion for the court to follow?

The majority apparently limits its ruling to being an approval of an action of a trial court which was within its discretion to make. It thus indicates it was not holding that the defendant was entitled to be discharged as a matter of right because of the unreasonable and inexcusable delay in bringing him before the court. However, I am not aware of any precedent in this State for permitting a trial court as a discretionary act to dismiss a criminal charge in bar of action as a prophylactic measure.

The traditional remedy for an accused improperly held is to seek a writ of habeas corpus. No showing was made here that the defendant was held incommunicado and could not have consulted a lawyer. I realize the practical limitations imposed upon one not brought before a judicial officer. He may not know that he can call a lawyer, and if indigent he may have difficulty in obtaining one before one is appointed by the court. Civil action against those responsible for the wrongful detention may likely be unavailing and not an effective deterrent. Nevertheless, I am confident that if an incarcerated accused is not held incommunicado, he would soon be able to make contact with a lawyer who would be willing to represent him for a sufficient length of time to obtain a writ of habeas corpus.

Even if the intent of the majority is to limit application of this case to those involving minor offenses when the time of delay represents a substantial portion of the imprisonment the accused would likely undergo if convicted, I am unwilling to create so drastic a sanction. I would follow the reasoning of the supreme court in *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724, and *People v. Howell* (1975), 60 Ill. 2d 117, 324 N.E.2d 403, in holding that such sanction should result only from legislation.

I would reverse and remand for a new trial.