THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTEASE THOMPSON, a/k/a Tony Richardson, a/k/a Victor Belton, Defendant-Appellant.

First District (2nd Division)     No. 79-2365

Opinion filed December 22, 1980.

James J. Doherty, Public Defender, of Chicago (Thomas E. Verdun, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

After a bench trial, defendant Victor Belton[1] was convicted of aggravated assault and resisting arrest (Ill. Rev. Stat. 1977, ch. 38, pars. 12—2(a)(1) and 31—1) and sentenced to nine months in the House of Correction with credit for time already served. His motion for a new trial was denied and defendant appeals contending that his right to due process was violated by his arraignment 42 days after his warrantless arrest and that he was denied his constitutional right to confront the prosecution's witnesses against him.

The record indicates that defendant's case was initially called on August 23, 1979, two days after his arrest. At that time the court noted that defendant was in the hospital and entered a continuance to October 2, 1979. Defendant was released from the hospital on August 25, 1979, and incarcerated until October 2, 1979, when he appeared in court for the first time. On that date he presented a *pro se* writ of *habeas corpus* alleging that he was beaten by police officers, taken to the police station where he was not permitted to call his attorney or a family member, hospitalized, and upon release booked into the county jail, where he remained incom-

---

[1] It appears from the record that defendant's given name is Victor Belton. We shall refer to him as such though the record reveals that he was charged under the alias, Martease Thompson, and tried under another alias, Tony Richardson.

municado. He alleged that his constitutional rights were violated since he was not apprised of the charges against him, notified of any indictment against him, nor afforded the benefit of counsel. The writ was denied without a hearing and defendant entered a plea of not guilty. Defendant reintroduced the writ on October 15, 1979, and it was once again denied on the basis that defendant's allegations were insufficient to support a writ of *habeas corpus*. Counsel was subsequently appointed.

The testimony at trial revealed that a police team responding to a radio message of a burglary in progress attempted to stop defendant and a person standing next to his automobile who matched the description of individuals involved. Officer McCarthy testified that defendant stopped his car, but when the officers approached, he fled in the black Cadillac he was driving. A high speed chase ensued and the officers were joined by another police squad car. The defendant drove into an alley and crashed into two automobiles, one of which was occupied. He fled on foot with a gun in his hand and Officer McCarthy pursued him, announced his office and shot at defendant. During the chase he saw defendant point a gun in his direction. Officer McCarthy was joined in the chase temporarily by Officer O'Connor, but at one point both lost sight of the defendant. Officer McCarthy located defendant on the third floor of a semi-occupied apartment building and pursued him to the front door. There the defendant met another team of officers responding to Officer McCarthy's call for assistance. The defendant turned back and was met by Officer McCarthy, who stated that a struggle ensued. Defendant was subdued by the officers and handcuffed. He was asked about the gun, and, when he did not respond, was taken to the police station. No gun was found in the apartment or in the car.

Officer O'Connor corroborated this sequence of events, adding that he observed defendant standing in the middle of a vacant lot pointing the gun at Officer McCarthy. His search for the gun also proved negative.

The defendant testified on his own behalf that he was walking down the street on his way to the beauty salon which he frequented, when a police officer came running toward him, knocked him to the ground, pulled out his gun and shot in his direction. He stated that he was so frightened that he got up off the ground and ran through an alley. He yelled for help because he wanted people to witness the incident that was about to occur. The defendant stated that four officers approached him, handcuffed him, punched him in the midsection and took him up to a vacant third-floor apartment for interrogation. He testified that about 12 to 15 officers beat and kicked him when he did not answer responsively to the questions that they asked. He was taken to the police station and then hospitalized for five days for the injuries he sustained.

Following closing arguments the court found defendant guilty and

sentenced him to nine months in the House of Correction with credit for time served. On December 6, 1979, defense counsel made a motion for a new trial, claiming that he had received information that a complaint had been filed against the testifying officers on behalf of defendant alleging brutality.[2] Defense counsel stated that this indicated a possibility of bias on the part of the officers and that defendant did not have an opportunity to cross-examine them with this knowledge. Defense counsel also argued that defendant had been denied due process and equal protection because he was incarcerated for 42 days on a warrantless arrest without arraignment and benefit of counsel. The motion was denied, and defendant appeals.

Defendant's first contention on appeal is that his constitutional right to due process was violated when he was not given notice of the charges against him nor arraigned before a judge until 42 days after his warrantless arrest. Defendant contends that the delay violated his right to liberty and thereby deterred his defense efforts since he was incarcerated without being apprised of the charges against him. The State argues that defendant was not denied his right to due process since an arraignment was scheduled for two days after his arrest and was continued because of his absence, and further, that the defendant has failed to demonstrate any actual and substantial prejudice resulting from the period which followed.

Section 109—1 of the Code of Criminal Procedure states in pertinent part:

> "A person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county and a charge shall be filed." (Ill. Rev. Stat. 1977, ch. 38, par. 109—1(a).)

This section was recently analyzed in a Fourth District case which defendant cites in support of his contention. The case was expressly limited to its facts, and the court declined to hold that a violation of the statute was a *per se* violation of due process. (*People v. Dees* (1980), 81 Ill. App. 3d 35, 400 N.E.2d 1050.)[3] The court in *Dees* determined that, where the defendant was incarcerated after a warrantless arrest and arraigned 14 days later with no explanation provided by the State even though a judge was available every working day, the defendant was denied his right to due process resulting in actual and substantial prejudice to him. Consequently, the court in *Dees* held that the information should be dismissed

---

[2] The record indicates that the officers were exonerated of these charges; however, it is not clear whether this occurred before or after defendant's trial.

[3] The State's petition for leave to appeal has been granted by the Illinois Supreme Court (No. 53152).

without leave to refile. The court also indicated that it was taking this action to deter arbitrary illegal conduct by law enforcement officials even though there did not appear to be an express showing of prejudice by the accused.

In deciding this case we find the decision in *Gerstein v. Pugh* (1975), 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854, instructive. *Gerstein* was a class action suit brought by criminal defendants challenging procedures under Florida statutes whereby a person arrested without a warrant and charged by a prosecutor's information could be jailed or subjected to other restraints pending trial without any opportunity for a probable cause determination. The Supreme Court held that the fourth amendment required a judicial determination of probable cause as a prerequisite to an extended restraint of liberty following arrest. The court added that, while the determination that a prosecutor's assessment of probable cause was not sufficient alone to justify a restraint of liberty pending trial, there should be no implication that the accused is thereby entitled to judicial oversight or review of the decision to prosecute. The court also noted that it was not retreating from the established rule that illegal arrest or detention does not void a subsequent conviction and that "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." 420 U.S. 103, 119, 43 L. Ed. 2d 54, 68, 95 S. Ct. 854, 866.

A similar conclusion was reached by our supreme court on a challenge to the lack of a preliminary hearing mandated by section 7 of article I of the 1970 Illinois Constitution. The court acknowledged that holding the defendant on a felony charge for 65 days without giving him a prompt preliminary hearing or presenting his case to the grand jury violated the letter and intent of this section of the constitution; however, the court noted that no grant of immunity from prosecution was provided as a sanction for such violation. *People v. Howell* (1975), 60 Ill. 2d 117, 119-20, 324 N.E.2d 403; see also *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724.

■■ We find the cases which have affirmed subsequent convictions after a failure to provide a preliminary hearing or probable cause determination analogous to the case at bar. We therefore conclude that the delay in bringing the defendant before the court for arraignment does not raise sufficient due process grounds on which to dismiss the conviction.

Further, while we join with the court in *Dees* in condemning any practice of delay in bringing defendants before a court for arraignment, we find the facts in the case at bar distinguishable. The record in the instant case reveals that the State attempted to arraign defendant two

days after his arrest. The case was called in court and the complaints were filed. There is no indication in the record of what information was received by the court in the off-the-record discussion which was held with the prosecution, but as a result, the court announced that defendant was in the hospital and the case was continued until October 2, 1979. Defendant was released from the hospital on August 25, 1979, and incarcerated in the county jail. We find no evidence of arbitrary action on the part of the trial court or the State. It appears that the continuance was given in deference to defendant's hospitalization, and while in retrospect a shorter date would have been more appropriate given defendant's early release from the hospital, we do not find it necessary to reverse absent a showing of actual and substantial prejudice accruing to defendant.

In *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, our supreme court outlined a balancing test to be utilized in determining whether a defendant has been denied due process because of pre-indictment delay. The court held that defendant must first come forward with a clear showing of actual and substantial prejudice which resulted from the delay between an alleged crime and indictment or arrest or accusation. Once substantial prejudice has been demonstrated, the State must show the reasonableness, if not the necessity, of the delay, and if both parties have met this burden, the court must then make a decision based upon a balancing of the interests of the defendant and the State.

Defendant has made general statements that his defense efforts were hampered, but he has not shown actual and substantial prejudice resulting therefrom. He has alluded to witnesses who may have been called, but a mere showing of the possibility of prejudice is insufficient. (*People v. Lawson.*) There is no showing that the time period prevented defendant from contacting potential witnesses. (See *People v. Park* (1980), 81 Ill. App. 3d 108, 400 N.E.2d 966.) He was able to recall the events which transpired on the day of his arrest and at trial described them in detail. For this additional reason we do not find any due process violation since we conclude that defendant has not met the test of establishing actual and substantial prejudice resulting from the delay which would require reversal.

Defendant also contends that he was denied his constitutional right to confront the prosecution's witnesses against him. The sole basis for this contention is that defense counsel learned after trial that a complaint had been filed with the Internal Affairs Division of the Chicago Police Department against two prosecution witnesses by a member of defendant's family. Defendant concludes that, since he was unable to cross-examine the officers concerning their possible bias in the case, he was denied his constitutional right to confront his accusers and therefore, his conviction must be reversed.

Defense counsel presented this newly discovered evidence to the trial court at the hearing on the defense motion for a new trial. The court determined that it would go only to the weight of the evidence, and would be a factor for the court to consider after the testimony and cross-examination of the defendant and the officers. The motion was denied.

In order to warrant a new trial based on newly discovered evidence, the evidence must be of such a conclusive character that it will probably change the result on retrial. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) It must also be noncumulative, discovered after trial, and be of such a character that it could not have been discovered before trial by the exercise of due diligence. (*People v. Whittaker* (1978), 56 Ill. App. 3d 430, 373 N.E.2d 30.) Newly discovered evidence which merely discredits a witness is generally not a ground for a new trial. *People v. Johnson* (1978), 60 Ill. App. 3d 183, 376 N.E.2d 381.

■■ Applying these guidelines to the case at bar, we find that the new evidence would not likely change the result of the trial, and, further, it appears that the evidence could have been discovered with due diligence. Since the defense was based on the alleged brutality of the officers and the complaint was filed by a member of defendant's family, knowledge of its existence seems readily available.

We find that the evidence does not support defendant's claim that he was denied his right to confront his accusers, and no manifest abuse of discretion on the part of the trial court in denying defendant's motion for a new trial has been demonstrated. The judgment of the circuit court is therefore affirmed.

Judgment affirmed.

PERLIN, P. J., and HARTMAN, J., concur.