THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JEFFERY MOLSTAD, Defendant-Appellant.

First District (2nd Division)   No. 81-2770

Opinion filed February 15, 1983.

J. E. McKeigue, of Hazel Crest, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Marie Quinlivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant Jeffery Molstad was one of nine defendants indicted for attempted murder, two counts of aggravated battery, armed violence and criminal damage to property. Prior to trial, the armed violence count was *nolle prossed* by the State. At the close of the State's case, the circuit court entered a finding in favor of codefendant Edward Kroll as to all counts. Following trial, codefendants Edward Rzab and Rodney Phillips were acquitted, and Molstad and four codefendants, David Kroll, Mark Schmidt, David Kent and Jose Flores, were found guilty of criminal damage to property and aggravated bat-

tery. Each was given concurrent sentences of 30 months' felony probation and ordered to make restitution of $500.

The principal issues raised on appeal include whether: the circuit court improperly denied Molstad's post-trial motion, supported by affidavits, to introduce the exculpatory testimony of six codefendants; Molstad was proved guilty beyond a reasonable doubt; and Molstad was properly ordered to pay $500 restitution on the criminal damage to property conviction.

For the reasons given below, we remand the cause for an evidentiary hearing on Molstad's motions.

Only the facts relevant to disposition of this appeal need be recited. At approximately 11:45 p.m. on April 2, 1981, the victim, Tom Bonner, left Wendy Albritton's house in his father's car accompanied by Wendy and Sandy Bonner. In the vicinity of 145th and Kilpatrick, an orange pickup truck pulled in front of their car, blocking their progress. A blue station wagon joined the truck in front of their car and a brown pickup truck pulled in from behind. Approximately eight to 10 persons, some armed with bats and pipes, jumped out of their vehicles and attacked their car.

Albritton testified that she and Sandy got out of the car as the windows were being hit. She recognized David Kent, Mike Guerra,[1] David Kroll and Mike Schmidt as some of the attackers. Eddie Rzab was the driver of the brown pickup truck. Geary opened the front door and hit the victim in the head with a bat. Jose Flores hit the victim. She saw an individual, known to her as Jethro (identified later as Molstad), hitting the back window of the car with "an object." She had seen Molstad on about 10 occasions prior to the incident.

The victim testified he was first hit in the head while seated in the car. He got out of the car and ran until he fell into a ditch. He was hit repeatedly with a pipe and a bat. It was stipulated that the victim was hospitalized for six days and sustained multiple bruises of various parts of his body, traumatic lacerations of the skull, possible brain contusion and fracture of the right phalange. It was also stipulated that the victim told hospital personnel that he had been admitted to the hospital in the previous month with head and finger injuries.

Molstad testified that on April 2, 1981, he returned to his home between 10:10 and 10:30 p.m., sat in the living room for 30 to 45 minutes, and then went upstairs to bed. He did not leave his home or come downstairs for the rest of the night. His testimony was corrobo-

---

[1]Indicted as Mike Geary.

rated by that of his father and mother. His mother retired at the same time as Molstad. Patrick Smith testified that he last saw Molstad at about 10:15 p.m. in front of his house.

Molstad's counsel filed a post-trial motion to reopen his case-in-chief or in the alternative for a new trial, in support of which he presented affidavits of four convicted codefendants, David Kent, David Kroll, Jose Flores, Mike Schmidt and one acquitted codefendant, Edward Kroll. None of the convicted affiants had been sentenced as of the time the affidavits were submitted. Molstad's counsel subpoenaed a sixth codefendant, Edward Rzab, who had been found not guilty. Counsel for Rzab moved to quash the subpoena and stated that his client did not want to testify on this matter. The motion was allowed. The circuit court denied Molstad's post-trial motions without an evidentiary hearing.

On appeal Molstad contends that the circuit court improperly denied his motions for a new trial or to reopen his case-in-chief. He admits that he was aware of the exculpatory information before trial, but contends that this testimony was not legally available to him during the trial. For this reason, he argues that his motion is similar to a motion for a new trial based upon newly discovered evidence. The State counters that Molstad meets none of the requirements which would authorize a new trial on grounds of newly discovered evidence.

Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and must be closely scrutinized. (*People v. Reese* (1973), 54 Ill. 2d 51, 59, 294 N.E.2d 288; *People v. Nolden* (1980), 91 Ill. App. 3d 532, 542, 414 N.E.2d 1124.) The matter is largely discretionary with the circuit court, and its determination will not be disturbed except in the case of a manifest abuse. (*People v. Holtzman* (1953), 1 Ill. 2d 562, 569, 116 N.E.2d 338.) To warrant a new trial, the new evidence must be of such a conclusive nature that it will probably change the outcome on retrial. (*People v. Thompson* (1980), 91 Ill. App. 3d 1111, 1117, 415 N.E.2d 648.) It must also be noncumulative, discovered after trial, and be of such a character that it could not have been discovered before trial by the exercise of due diligence. *People v. Miller* (1980), 79 Ill. 2d 454, 464, 404 N.E.2d 199.

Applying these principles and general precepts of due process to the instant controversy, it is clear that the proposed evidence could have demonstrated Molstad's absence from the scene of the crime, which was material to the issue of his guilt or innocence, and thereby would have been of a conclusive nature.

Molstad argues that the evidence set forth in the affidavits was

not available to him until after the trial; however, the record shows that he knew of the evidence before trial and decided as a matter of strategy to do nothing. Molstad's counsel had a duty to move for a severance at that time, which he failed to do. (See *People v. Lee* (1981), 87 Ill. 2d 182, 186, 429 N.E.2d 461.) Nevertheless, codefendants/affiants asserted that they did not testify on Molstad's behalf because such evidence would have damaged their own defensive interests. Additionally, there was no assurance that the motions would have been granted or that codefendants would have relinquished their fifth amendment rights. (Wharton's Criminal Procedure sec. 403 (12th ed. 1975).) To be noted further is the fact that the affidavits were presented prior to sentencing, which lends credence to the argument that Molstad was not "*** attempting to practice fraud or imposition upon the court in order to escape the consequences of an adverse verdict." *People v. LeMorte* (1919), 289 Ill. 11, 23, 124 N.E. 301, cited in *People v. Holtzman.*

The circuit court characterized the evidence contained within the affidavits as cumulative of alibi evidence; in doing so, however, the court overlooked the difference between proving that a defendant was at some other place than where the crime was committed and proving that he was not at the scene at that time. This difference was explicated by the supreme court in *People v. Fritz* (1981), 84 Ill. 2d 72, 417 N.E.2d 612. In *Fritz*, the supreme court reversed a conviction and remanded the cause for a new trial, in part because the distinction between proving alibi and proving absence from the scene was misunderstood by the circuit court. The supreme court stated:

> "Since the State must prove that the defendant was present at the time an offense allegedly occurred (*People v. Pearson* (1960), 19 Ill. 2d 609, 614), a defendant may introduce the testimony of an occurrence witness that the witness did not see the defendant at the time and place in question. Such testimony is elicited to rebut the State's case. It is not designed to establish that a defendant was at any other definite place.
>
> We think there is a difference between attempting to prove that a defendant was in some definite place other than where the crime occurred, and attempting to prove that the defendant was not at the scene of the offense at the time it allegedly occurred." (84 Ill. 2d 72, 78.)

Each affidavit submitted here purported to establish that the affiant: was charged with criminally attacking and injuring the victim; was either found not guilty, as in the case of Edward Kroll, or guilty, as in the cases of Kent, David Kroll, Flores and Schmidt; knew Molstad for

a long time prior to the incident; then knew that Molstad was not present at the time of the attack and did not participate in it; and did not testify at trial or come forward earlier because of his own "defensive" position. These affidavits would not have established an alibi for Molstad. Furthermore, the evidence offered would have shown not where Molstad was at the time of the attack, in other words, the alibi evidence, but where he was not, quite a different proposition.

Affidavits relating to newly discovered evidence should be construed fairly as they may affect a defense or, as in this case, tend to rebut the State's evidence (see *Hamilton v. United States* (D.C. Cir. 1944), 140 F.2d 679; 24 C.J.S. *Criminal Law* sec. 1484, at 284 (1961)) since the State was required to prove that Molstad was present at the time the offense was alleged to have occurred. (*People v. Pearson* (1960), 19 Ill. 2d 609, 614, 169 N.E.2d 252; *People v. Fritz* (1981), 84 Ill. 2d 72, 78.) Further, none of the affiants had testified at trial; yet the court stated, "Their credibility, however, is strained with this court," without further inquiry or opportunity for examination into this aspect of the case. Because credibility is dependent not only upon the willingness of a witness to tell the truth, but also, his or her ability to observe, recall and relate his or her knowledge of a fact or event, it is difficult to perceive how the credibility of one who has not yet testified in a case can be considered "strained," as characterized by the circuit court in the present case. See *People v. Hilliard* (1978), 65 Ill. App. 3d 642, 645, 382 N.E.2d 441.

■ For the foregoing reasons, it was error to dismiss the proposed evidence related to Molstad's intended rebuttal of the prosecutor's evidence concerning his presence at the scene without an evidentiary hearing. (See *People v. Bland* (1978), 67 Ill. App. 3d 716, 384 N.E.2d 1380, *appeal denied* (1979), 75 Ill. 2d 591.) Accordingly, the conviction must be vacated and the cause remanded for consideration of the proffered evidence of Molstad's alleged absence from the scene of the crime at the time it took place, from the standpoint of rebuttal, rather than alibi evidence. If the circuit court chooses to accept the rebuttal evidence, it may enter appropriate orders respecting Molstad's motions. If the court rejects such evidence, it may reinstate the conviction.

■ Assuming the circuit court reinstates Molstad's conviction, other issues raised in this appeal will become operative and material and we consider them here in the event such contingency comes to pass. Molstad's argument, that he was not proven guilty beyond a reasonable doubt of either criminal damage to property or aggravated battery, is without merit, in the event the circuit court believes he

was at the scene. Albritton's testimony was sufficient to support the conviction. (*People v. Manion* (1977), 67 Ill. 2d 565, 367 N.E.2d 1313; *People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462.) Although Molstad did not actually strike the victim's body, the circuit court could have reasonably found from Albritton's testimony that he was legally accountable (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)) for the blows inflicted by codefendants. Albritton's testimony, if believed, that Molstad hit the back window of the victim's car with an object, established that Molstad had "concurrent specific intent" to promote the commission of the aggravated battery offense. *People v. Campbell* (1979), 77 Ill. App. 3d 804, 396 N.E.2d 607.

In view of our disposition of this appeal, we find it unnecessary to address the other arguments raised.

For the reasons above stated, the judgment of the circuit court is vacated and remanded for an evidentiary hearing on defendant's post-trial motions.

Vacated and remanded.

DOWNING, P.J., and PERLIN, J., concur.

