(No. 46602.—

JACK HOSKINS *et al.*, Appellants, v. DANIEL J. WALKER, Governor, Appellee.—ILLINOIS FEDERATION OF TEACHERS *et al.*, Appellants, v. DANIEL J. WALKER, Governor, Appellee.

*Opinion filed July 1, 1974.*

Drach, Terrell and Deffenbaugh, of Springfield, for appellants Jack Hoskins *et al.*

Gilbert A. Cornfield of Kleiman, Cornfield and Feldman, of Chicago, for appellants Illinois Federation of Teachers *et al.*

William J. Scott, Attorney General, of Springfield (Thomas H. Price, Jr., Assistant Attorney General, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the constitutionality of sections 1A—1 and 1A—2 of the Illinois School Code (Ill. Rev. Stat. 1973, ch. 122, par. 1A—1, 1A—2), which prescribe the qualifications for membership on the State Board of Education and establish regional representational districts. Two separate actions challenging these provisions were filed in the circuit court of Sangamon County. Plaintiffs in one case are Jack Hoskins and other individuals, all of whom are disqualified from membership on the State Board of Education by section 1A—2. The other case is a class action brought by the Illinois Federation of Teachers and named individuals, on behalf of all persons disqualified from membership on the State Board of Education by section 1A—2. The complaints request a declaratory judgment that the sections are unconstitutional, and also request appropriate injunctive relief. Because the cases involve the same legal issues they were consolidated by the circuit court. Subsequently the court allowed the motion of defendant Governor Walker for summary judgment. We granted plaintiffs' motion to transfer the appeal to this court pursuant to Supreme Court Rule 302(b). 50 Ill.2d R. 302(b).

Challenged in this case are provisions of the School Code enacted to implement section 2 of article X of the 1970 State constitution, which states:

"(a) There is created a State Board of Education to be elected or selected on a regional basis. The number of members, their qualifications, terms of office and manner of election or selection shall be provided by law. The board, except as limited by law, may establish goals, determine policies, provide for planning and evaluating education programs and recommend financing. The Board shall have such other duties and powers as provided by law.

(b) The State Board of Education shall appoint a chief state educational officer."

To implement this constitutional provision the legislature passed Public Act 78—361 (Ill. Rev. Stat. 1973, ch. 122, pars. 1A—1 through 1A—4). The Act creates a State Board of Education consisting of 17 members to be appointed by the Governor with the advice and consent of the Senate. Regional representation is accomplished by selecting Board members from the five judicial districts. Eight members are to be selected from the First Judicial District, two members are to be selected from each of the remaining judicial districts, and one member is to be selected at large. The Board will not assume full powers until the expiration of the term of the State Superintendent of Public Instruction on the second Monday in January, 1975, at which time it will assume all duties currently delegated to the office of Superintendent of Public Instruction. During the interim between its appointment and assumption of full powers, the Board is to serve in an advisory capacity.

Two sections of the Act are challenged here, section 1A—1 providing for regional representation from the judicial districts (Ill. Rev. Stat. 1973, ch. 122, par. 1A—1), and section 1A—2 establishing the qualifications for Board membership (Ill. Rev. Stat. 1973, ch. 122, par. 1A—2). We shall first consider the challenge to section 1A—2.

Qualification for Board membership is specified in the following terms:

> "1A—2. Qualifications. The members of the State Board of Education shall be citizens of the United States and residents of the State of Illinois and shall be selected as far as may be practicable on the basis of their knowledge of, or interest and experience in, problems of public education. *No member of the State Board of Education shall be gainfully employed or administratively connected with any school system or institution of higher learning, public or private, nor shall they be members of a school board or board of school trustees of a public or nonpublic school, college, university or technical institution.*" (Emphasis added.)

Plaintiffs in both suits contend that the italicized portion of section 1A—2, which makes them ineligible for membership on the Board, denies them equal protection of the law. Plaintiffs Hoskins *et al.* also argue that the term "administratively connected with any school system or institution of higher learning" is unconstitutionally vague and that the broad disqualifications of section 1A—2 are repugnant to the mandate that Board members be chosen on the basis of their knowledge of and experience in the area of public education.

In deciding whether the disqualifications of section 1A—2, which admittedly prohibit active teachers and educators from serving on the State Board of Education, deny those persons equal protection, we are faced with the threshold question raised in one complaint of whether the statute is to be tested by traditional equal protection principles or by the more rigorous analysis applicable to classifications infringing upon fundamental rights. Tested by traditional principles a classification will be sustained if there is a reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not. In such cases there is a presumption favoring the validity of the legislative classification and the burden is on the party challenging it to establish its invalidity. (*People v. McCabe,* 49 Ill.2d 338, 340-341.) In considering a classification which affects fundamental rights no such presumption of validity prevails and the classification will be sustained only if it is justified by a compelling State interest. *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886; *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079.

The Supreme Court of the United States has held that neither the right to freely associate nor the right to participate in political activities or to be a candidate for office is absolute. (*Broadrick v. Oklahoma,* 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908; *United States Civil*

*Service Com. v. National Association of Letter Carriers,*
413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880.) The
compelling-interest test is applied in cases where the
limitations impose a real and appreciable impact on the
exercise of the voting franchise. *Bullock v. Carter,* 405
U.S. 134, 31 L. Ed. 2d 92, 92 S. Ct. 849.

Members of the State Board of Education are to be
selected by appointment rather than by election. Conse-
quently the qualification requirements of section 1A–2
will have no effect on voting rights. Absent any such effect
on the voting franchise we believe these requirements must
be tested by traditional equal protection principles. Ac-
cording to traditional analysis a legislative classification is
presumed to be valid, and will not be set aside if any state
of facts may reasonably be conceived which justify it.
*McGowan v. Maryland,* 366 U.S. 420, 6 L. Ed. 2d 393, 81
S. Ct. 1101.

The obvious purpose to be served in limiting member-
ship on the State Board of Education to persons not
actively engaged in or connected with any school or school
system is to prevent any potential conflict of interests and
to prevent placing people on the Board whose other
interests would naturally tend to promote or favor one
segment of the State's educational structure over another.
Considering the broad range of powers currently exercised
by the Superintendent of Public Instruction (Ill. Rev. Stat.
1973, ch. 122, pars. 2–3.1 to 2–3.39), and which will
soon be assumed by the State Board of Education, we
think the State has a legitimate interest in acting to
accomplish these goals. Disqualification from Board mem-
bership of all persons associated with any school or school
system is surely a reasonable method of doing this.
Consequently, section 1A–2 does not violate petitioners'
rights to equal protection of the laws.

We note that membership on numerous other State
boards is denied to persons actively engaged in activities
subject to the jurisdiction of the particular board. (See Ill.

Rev. Stat. 1973, ch. 122, par 102—2 (Illinois Community College Board); ch. 122, par. 30—15.3 (State Scholarship Commission); ch. 8, par. 37a1 (Illinois Racing Board); ch. 43, par. 102 (Illinois Liquor Control Commission).) Moreover, numerous other States have similar provisions restricting membership on their State Boards of Education to persons not connected with education. The defendant's brief lists 17 such States: Alabama, Arkansas, Georgia, Iowa, Kentucky, Maryland, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New York, Ohio, Oregon, Pennsylvania, South Dakota and Texas.

Petitioners also contend that the broad disqualifications of section 1A—2 are repugnant to the prescription of the same section that Board members are to be selected on the basis of their experience in the educational field. However, we do not agree that these requirements are in any way inconsistent. Both provisions reflect legitimate goals. The persons disqualified are not the only persons with the knowledge, interest and experience-in-education qualifications which the appointees must possess. It cannot be seriously contended that the disqualifications will cause any difficulty in finding qualified persons to sit on the State Board of Education.

We next turn our attention to the contention that the disqualification from Board membership of persons "administratively connected with any school system or institution of higher learning, public or private," renders section 1A—2 unconstitutionally vague. Initially it should be observed that this language is directed to the Governor and the Senate as the nominating and consenting authorities; it is not directed to potential Board members. We think the term actually employed is not so vague that one would have to guess its meaning. Moreover, it would not have been practicable for the legislature to specify with more particularity those persons who because of their close ties to the educational field should be ineligible for Board membership. Of necessity the disqualification had

to be defined in broad terms. The mere possibility that this statute may be improperly applied does not render it unconstitutional. *Stein v. Howlett,* 52 Ill.2d 570; *People v. Raby,* 40 Ill.2d 392.

Petitioners' last contention is that the method of allocating membership on the Board according to judicial districts violates the mandate of section 2 of article X of the Constitution that members be selected on a regional basis. As already noted section 1A–1 provides for eight members to be selected from the First Judicial District, two members to be selected from each of the other four judicial districts, and one member to be selected at large. Petitioners argue that because the First Judicial District encompasses an extremely small area of the entire state, but is allocated more than half of the Board membership, the scheme of representation is totally arbitrary. They apparently contend that a valid plan of regional representation must contain geographically equal regional units having equal representation on the State Board. We must reject this contention.

Although article X of the 1970 Constitution prescribes regional representation, it does not prescribe the method to be used in establishing the regions, and certainly does not prohibit the method chosen. The constitutional convention's Committee on Education clearly considered that a system of regional representation might be based on existing judicial or congressional districts. In its proposals to the convention the committee stated:

> "It is recognized that the General Assembly may find it wise to use existing districts, of one sort or another, in determining representation. If congressional districts are used it might result in a board of 24 members. If judicial districts are used, or a combination of legislative districts, or other regions, still other membership would result. Committee members generally favor a board with from 9 to 15 members. But it is considered wise to leave the decision on membership to future legislatures." (6 Record

of Proceedings, Sixth Illinois Constitutional Convention 244-5.)

Thus, we think that the method of representation established by section 1A—1 is entirely consistent with section 2 of article X of the Constitution.

For these reasons, the circuit court of Sangamon County properly allowed defendant's motion for summary judgment, and the judgment is affirmed.

*Judgment affirmed.*