THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES PERINE, Defendant-Appellant.

First District (5th Division)   No. 78-2078

Opinion filed March 21, 1980.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of possession of 30 grams or more of a substance containing heroin (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a)), and was sentenced to nine years in the penitentiary. On appeal, he raises the following issues: (1) that the State did not prove beyond a reasonable doubt that the substance he allegedly possessed was heroin; and (2) that sections 8(b) and (d) of the Dangerous Drug Abuse Act are unconstitutional in that they violate the equal protection and due process clauses respectively of the United States and Illinois constitutions.

On April 29, 1976, at about 1:30 p.m., Chicago police officer Thomas Riley arrived at 18th and Canalport, Chicago, after receiving a call from an undercover officer regarding a purchase of narcotics that was to take place at 2:30 that morning. At about 2:15 a.m., a black Camero with two occupants pulled up, and a man whom Riley knew to be Charles Leak emerged from the car. Leak met with another man in the parking lot at the corner of 18th and Canalport, and the two had a brief conversation. During this conversation, the unidentified man handed something to Leak. Leak soon returned to the car, and as he entered, Riley recognized defendant as the passenger. They drove away, and other police surveillance vehicles followed them to 8409 S. Vincennes, Chicago.

Riley rejoined the other police officers at that address at about 2:30 a.m. When he identified himself to the two men in the Camero, defendant threw something to the ground and ran into a nearby building. Riley picked up a 2″ x 4″ clear plastic bag that defendant dropped. It contained brown powder which a field test indicated to be heroin. Riley arrested defendant in the hallway of the building. Riley and other police officers then initialled the plastic bag, took it to the crime lab, and placed it in an

evidence envelope. The envelope was sealed, initialled, taped closed, given an inventory number and placed in a safe.

At trial, it was stipulated that George Halko, a chemist from the Chicago police department, analyzed the contents of a clear bag containing 66.94 grams of a brown substance which was submitted to the crime lab on April 29, 1976, by Riley and two other police officers, and inventoried under No. 379528. Halko removed a sealed evidence envelope under No. 379528 from the safe which contained the signature of Riley, among others, on the sealed flap of the unopened envelope. From the envelope, he removed a 2" x 4" plastic bag containing a brown powder, weighing 66.94 grams, which he chemically tested and found to be heroin.

It was further stipulated that the substance removed from the evidence envelope by Halko was the same substance recovered by Riley on April 29, 1976, and that there was an unbroken chain of custody.

Defendant testified that on the evening of April 28, 1976, he and his girlfriend visited Leak and his wife, who resided at 83rd and Vincennes, Chicago. Later that evening, he and Leak took a ride, but he did not ask about a specific destination, because he was spending the entire evening with Leak and his wife. They arrived at 18th and Canalport at 2:30 a.m., and Leak told defendant he had some business to take care of. Defendant waited in the car, unaware of what Leak was doing. After about 30 minutes, Leak returned, but did not appear to be carrying anything. The two did not discuss what had just transpired as they returned to Leak's apartment.

Later, as they got out of the car at 84th and Vincennes, Leak said, "Here come the police," and put something into defendant's pocket. Leak told him to get rid of it, and defendant threw it on the sidewalk as he walked toward the building. Defendant did not know what Leak gave him, but "figured it was some kind of contraband." He never looked at the packet that Leak put in his pocket.

OPINION

Defendant contends that the State failed to prove beyond a reasonable doubt that the substance he allegedly possessed was in fact, heroin, and that his conviction occurred in violation of his constitutional right to due process of law. (U.S. Const., amend. XIV; Ill. Const. 1970, art. 1, §2.) Defendant's contention is based upon alleged discrepancies contained in the stipulation entered into by the parties. Because two different inventory numbers (Nos. 379582 and 379528) in the stipulation refer to the packet of heroin analyzed by the police chemist, defendant asserts that two packets existed and that the stipulation fails to show which, if either, of the packets was recovered from defendant by the police.

■■ When contraband is sought to be introduced, the State must show a sufficient chain of custody to negate any possibility of tampering or substitution. (*People v. Hanson* (1977), 44 Ill. App. 3d 977, 359 N.E.2d 188.) In the instant case, the record proves in its entirety that the substance obtained from defendant was the same untampered substance that was later tested and found to be heroin. Officer Riley recovered only one plastic bag containing brown powder from defendant on April 29, 1976. He then placed that plastic bag in an evidence envelope, initialled the envelope, inventoried it, and put it in the crime lab safe. The stipulation indicates that the police chemist later removed a single sealed evidence envelope from the safe bearing Officer Riley's initials over the flap of the unopened envelope. The record contains no indication of any tampering with the substance or substitution between the packet taken from defendant and the one later analyzed by the chemist.

The only support for defendant's assertion in the entire record is the reversal of the last two digits in the six-digit inventory number referred to in the stipulation. Contained in that same stipulation, however, is the statement that the substance tested by the chemist was the same substance recovered by Officer Riley on April 29, 1976, and that there was an unbroken chain of custody. Cases cited by defendant are distinguishable from the instant case because in those cases there was no showing of a direct link between defendant and the contraband. (*People v. Maurice* (1964), 31 Ill. 2d 456, 202 N.E.2d 480; *People v. Resketo* (1972), 3 Ill. App. 3d 633, 279 N.E.2d 432.) Moreover, in the present case, defendant never objected to the alleged insufficiency of the chain of possession as recited in the stipulation. Instead, defense counsel's trial strategy was to deny that defendant "knowingly" possessed the substance as required by statute. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a).) The alleged discrepancy in inventory numbers was apparently noticed only after the transcript was prepared. This lends support to the State's contention that the difference between the numbers was more likely the result of an error in typing or transcription than an indication of more than one packet of heroin.

Based upon the foregoing reasons, we find that the State proved beyond a reasonable doubt that the substance taken from defendant was the same substance tested by the chemist and proven to be heroin.

Defendant also contends that section 8(b) of the Dangerous Drug Abuse Act (hereinafter the Act) (Ill. Rev. Stat. 1975, ch. 91½, par. 120.8(b)) violates the equal protection clause of the United States and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2), and that section 120.8(d) of the Act violates the due process clause of the United States and Illinois constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.

As to the equal protection challenge, defendant asserts that section 8(b) does not substantially promote or further any of the articulated purposes of the Act. That section provides:

> "An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of the Department instead of prosecution or probation, as the case may be, *unless * * * (b) the crime is a violation of Sections 401, 402(a), 405 and 407 of the Illinois Controlled Substance Act.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 91½, par. 120.8(b).)

Section 402(a) of the Illinois Controlled Substance Act provides:

> "* * * it is unlawful for any person knowingly to possess a controlled substance. Any person who violates this Section with respect to:
>
> (a) the following controlled substances and amounts * * * is guilty of a class 1 felony * * *:
>
> (1) 30 grams or more of any substance containing heroin." Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a).

Defendant was found guilty of possession of 30 grams or more of a substance containing heroin. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a).). Since defendant violated that section of the Illinois Controlled Substance Act, he was excluded from treatment under the Act, in accordance with section 8(b). (Ill. Rev. Stat. 1975, ch. 91½, par. 120.8(b).) Defendant, a heroin addict, argues that his exclusion from the drug treatment program under section 8(b) is not rationally related to the expressed legislative purpose of the Act, which basically provides for the treatment, care and rehabilitation of drug addicts. Section 2 states:

> "It is the public policy of the State that the human suffering and social and economic loss caused by addiction to controlled substances and the use of cannabis are matters of grave concern to the people of the State. It is imperative that a comprehensive program be established * * * to prevent such addiction and abuse; to promote research on the effects and consequences of the abuse of controlled substances and use of cannabis; to study the problem of the abuse of controlled substances and use of cannabis in this State and inform the public as to its findings; and to provide diagnosis, treatment, care and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community." Ill. Rev. Stat. 1975, ch. 91½, par. 120.2.

■■ We initially note that the defendant made no effort to preserve this issue for review. Defendant made no motion for new trial, and made no objection to the procedure followed by the trial court. Trial counsel for defendant even acknowledged at the sentencing hearing that defendant

did not qualify for the drug treatment program on the ground of statutory disqualification. Nevertheless, we find this issue reviewable under the plain error rule. (Ill. Rev. Stat. 1975, ch. 110A, par. 615.) The plain error rule allows a reviewing court, in its discretion, to consider errors not raised in a motion for new trial if those errors affect the substantial rights of a defendant. (*People v. Faulkner* (1978), 64 Ill. App. 3d 453, 381 N.E.2d 321.) Since defendant in the instant case was denied the opportunity to participate in the drug program, and instead was sentenced to nine years in the penitentiary, we feel that his right to treatment in lieu of incarceration is substantial, and review in this case is warranted.

Defendant does not allege that he is a member of a "suspect class," *i.e.*, groups that historically have been the subject of widespread, substantial and purposeful discrimination (see *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278); nor does defendant claim a deprivation of a fundamental constitutional right. (See *Hoskins v. Walker* (1974), 57 Ill. 2d 503, 315 N.E.2d 25.) Defendant merely argues that he was treated differently than a person convicted of possession of a substance containing heroin under the 30-gram amount specified under the Act.

■■ ■ In determining whether a given legislative classification denies a person the equal protection of laws, where that person is not a member of a suspect class or has not been deprived of a fundamental right, the courts restrict their role to determining whether the particular legislative classification is rationally designed to further a legitimate State purpose. (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 368 N.E.2d 903; *People v. Zahn* (1979), 71 Ill. App. 3d 585, 390 N.E.2d 93.) The equal protection clause does not mean that a State may not draw lines that treat one class of individuals or entities different from one another; the test is whether the difference in treatment is an invidious discrimination. (*Dandridge v. Williams* (1970), 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153.) There is a presumption in favor of the validity of the classification made by the legislative body and one who assails it has the burden of proving the classification to be arbitrary. *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 292 N.E.2d 401.

In the proceeding below, the trial court could have relied on section 8(b) in determining that defendant was ineligible for drug treatment, although it made no specific finding in this regard. Defendant argues that his exclusion from the drug program under this section is not rationally related to the legislature's intent to create a "comprehensive program" (Ill. Rev. Stat. 1975, ch. 91½, par. 120.2) since an addict, like defendant, cannot receive treatment for his addiction.

Although the legislature envisioned a "comprehensive program" it did not intend to provide treatment for all drug addicts under the Act.

(*People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10.) In *Warren*, the court stated:

> "It is our opinion, as earlier indicated, that the legislative purpose was to establish a departmental treatment program to which *certain drug addicts, whose eligibility under section 8 was established*, could be admitted in those cases in which the trial court determined that such disposition would be in the best interests of the defendant and society and the Department consented." (Emphasis added.) (*Warren*, 69 Ill. 2d 620, 629, 373 N.E.2d 10, 14.)

The purpose of the legislature in enacting the Act was similarly recognized in *People v. Smith* (1974), 23 Ill. App. 3d 387, 389, 319 N.E.2d 238, 240, as twofold: "(1) an effort to curb what appears to be a springboard or incentive resulting in the commission of criminal offenses, and (2) to rehabilitate the defendant *where possible.*" (Emphasis added.)

■ It is a reasonable inference that possession of an amount of contraband in excess of any amount which could be viewed as for personal use is possessed with intent to deliver. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.) The legislature may have reasoned that possession of 30 grams or more of any substance containing heroin (as in section 8(b)) supports the inference that the substance is destined for sale rather than personal use. Consequently, those convicted under that section are presumed traffickers in drugs, and are less likely to benefit from the rehabilitative aspects of the drug treatment program. Additionally, since one of the purposes of the Act is to "prevent such addiction and abuse" (Ill. Rev. Stat. 1975, ch. 91½, par. 120.2), the legislature could also have believed that incarceration of those who are likely to influence others to illegally use drugs furthers the expressed prophylactic purpose of the Act. We therefore find that the challenged legislative scheme is rationally designed to further a legitimate State purpose, and defendant was not subject to invidious discrimination.

Since the exclusion of defendant under section 8(b) does not violate equal protection, we will not consider defendant's constitutional attack of section 8(d).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.