THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD SCHULD, Defendant-Appellant.

First District (4th Division)   No. 1—87—0039

Opinion filed September 28, 1989.—Rehearing denied January 12, 1990.

Michael J. Pelletier and Deborah Liebow, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Paula M. Carstensen, Special Assistant State's Attorney, and Kenneth T. McCurry and Toi Denise Houston, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant and Wayne Damron were con-

victed of residential burglary. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3.) Defendant was sentenced to five years' imprisonment. Damron was sentenced to four years' imprisonment and his appeal (No. 86—3275) was dismissed for want of prosecution on March 31, 1988. On appeal, defendant contends (1) he was not proved guilty beyond a reasonable doubt; and (2) the trial court erred in excluding him from treatment under the Alcoholism and Substance Abuse Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*).

Barbara Gelardi testified that on Monday, April 21, 1986, she lived at 2512 West 59th Street in an apartment above a tavern. She explained that there were five doors to the building and pointed them out on photographic exhibits admitted into evidence. About 6:45 p.m. she went to dinner and all the doors were locked. When she arrived home about 8:40 p.m., glass from the back door of the apartment was broken, the door was open and the police were present. Boxes of papers belonging to her daughter, who was moving, were upstairs and the papers were scattered. Dogs that were left in the tavern area were upstairs. The door between the apartment and the tavern on the first floor was open. A police officer had a paper bag containing $106 which was missing from the tavern register. She identified defendant and Damron as customers of the tavern for two months.

Chicago police officer Fred Brownfield testified that about 7:45 p.m. he went to the building in question with Officer Shelton. He went to the front door of the building, heard noises and found defendant, who was carrying a paper bag, coming out of the door leading to the apartment. The bag contained $106 in bills and coins. The officer arrested defendant and found a screwdriver when he searched defendant. During cross-examination, he was questioned concerning grand jury testimony in which he had stated that he saw defendant coming from the front door of the tavern. The witness reiterated his trial testimony that he had seen defendant coming from the apartment door which was connected to the tavern.

Chicago police officer Melvin Shelton testified that Officer Brownfield went to the front of the building, and Shelton went into the upstairs apartment from the rear entrance. There he found the doors open and windows broken. He also found Damron huddled in the pantry in a crouched position, handcuffed him and led him downstairs. At that point, there were two doors. One led to the tavern and the other to the street. Both were wide open. He then saw defendant in custody but did not see a brown paper bag.

Wayne Damron testified that since February 1986 he had lived near the tavern and, on the day in question, he and defendant were

standing and drinking in an empty lot behind the tavern. About 7:30 p.m. Larry Kalafut offered to sell him a radio which did not have a rear panel or batteries. When defendant paid Kalafut $10, Kalafut said that he could get the rear panel and batteries, and Damron followed Kalafut up the back stairs of the tavern building to an apartment where Damron believed that Kalafut lived. Kalafut told Damron to wait in the kitchen and went to the front, but did not return. Minutes later police officers arrived and arrested him.

James Cruz was a friend of defendant, and he testified that he saw Officer Brownfield arrest defendant, who was standing in front of the vacant lot near the tavern between 7:30 and 7:45 p.m.

Defendant contends that he was not proved guilty beyond a reasonable doubt and his conviction was based solely on the inconsistent and conflicting testimony of the Chicago police officers. For example, defendant emphasizes that Officer Brownfield's trial testimony conflicted with his grand jury testimony and also points out that Cruz said that defendant was standing in a vacant lot next to the tavern when he was arrested. Defendant next points to Officer Shelton's testimony that he did not see a brown paper bag, although Officer Brownfield testified that he seized the bag from defendant. These and other claimed inconsistencies in the State's testimony present matters of credibility for the trial court to resolve. In making its finding, the trial court specifically mentioned that it found the three State witnesses worthy of belief, but did not find Damron or Cruz believable witnesses. The court concluded that it was satisfied that both men entered the building together through the upstairs residence anticipating attempts to steal from all parts of the building.

In a bench trial, once a defendant has been found guilty of the crime charged, all of the evidence should be considered in the light most favorable to the prosecution. (*People v. Bedony* (1988), 173 Ill. App. 3d 613, 618, 527 N.E.2d 916.) Witnesses' credibility and the weight to be given their testimony are determinations exclusively within the province of the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.) The crime of burglary requires that its elements often be proved by circumstantial evidence. (*People v. Suane* (1987), 164 Ill. App. 3d 997, 1005, 518 N.E.2d 458.) The trial court here found that defendant and Damron were acting in concert when they entered the building, and this conclusion is justified by the evidence. The testimony of the two police officers placed both men inside the building at the same time. Defendant was in the possession of proceeds taken from the tavern portion of the premises and was apprehended as he left. The evidence was sufficient to find either that

defendant had been in the residential portion of the premises or that he was acting in concert with Damron, who had been there. We find no reasonable doubt of defendant's guilt of residential burglary.

Defendant next contends that the trial court improperly excluded him from treatment under the Alcoholism and Substance Abuse Act. Defendant indicated immediately after the court's finding that he had a "problem with alcohol" and asked to be evaluated by TASC (substance abuse program). A TASC representative subsequently informed the court that defendant was an alcoholic who demonstrated likelihood for rehabilitation, but TASC was under the impression that an alcoholic only qualified for treatment if he qualified for a regular probation sentence. When the court asked the basis for this position, the representative stated that he was told this was the TASC position. The court then said it understood that the TASC position was that the statute that permits TASC treatment applies only to drug addiction as opposed to alcohol abuse, and defendant would not in any event be eligible for treatment because his conviction precluded probation. When defendant suggested a reevaluation for TASC treatment, the TASC representative said that there was some abuse of marijuana in defendant's history, but he would not venture to say that there was an addiction. In aggravation, it was stated that defendant was convicted and imprisoned for burglary in 1977. He violated his parole in 1979 and was convicted of burglary in Texas in 1981. The court said that it had seriously considered whatever would need to be done to get defendant into a treatment program for his alcoholism, but concluded that it was inappropriate given his background and the offense.

Section 4.1 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6304.1) provides:

" 'Addict' means any person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction."

Clearly this definition excludes alcohol. Nevertheless, defendant argues that the trial court had reason to believe that he was an addict. The foregoing statutory definition, which plainly excludes "alcohol" from its context, clearly does not include one such as defendant, who was described in the presentence report as an alcoholic and who stated that he never used drugs of any kind. Apparently, defendant nevertheless told the TASC representative of his use of marijuana. The court may have had reason to believe defendant was addicted to

alcohol, but the court did not have reason to believe that defendant met the statutory definition of "addict" set forth above.

Defendant further complains he was excluded because, according to the TASC representative and the trial court, he was ineligible. Probation may not be imposed for the offense of residential burglary. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(2)(G).) The trial court here appears only to have agreed that the position of TASC—to exclude persons ineligible for probation—was based on the statutory prohibition of probation for the offense of residential burglary. As defendant points out, section 21 of the Act does not specifically exclude such a person from eligibility for treatment; section 21(g), however, excludes a person convicted of residential burglary who has a record of one or more felony convictions, such as defendant. (Ill. Rev. Stat. 1985, ch. 111½, par. 6321.) The court stated that alcohol played a part in the commission of this offense by defendant and that the court had seriously considered doing whatever was needed to get defendant into a program for his alcoholism, but the court concluded that such course of action would be inappropriate. The trial court's decision to grant treatment rather than a sentence is a matter of discretion and will not be disturbed absent a showing that the circuit court's determination is clearly erroneous. (*People v. Suane*, 164 Ill. App. 3d at 1008-09.) Even if we were to consider defendant to be eligible, we conclude that the record demonstrates that the trial court considered the appropriate factors and that its decision that treatment was inappropriate was not clearly erroneous.

Finally, defendant contends that interpretation of the Act to exclude defendant, an alcoholic, from treatment as an addict violates the equal protection clauses of the United States and Illinois Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) Defendant notes that the Act does deal with alcoholism as an illness, which, according to section 2 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6302), is a matter of grave concern and requires a comprehensive and coordinated strategy. Defendant acknowledges that the State has allowed only drug addicts to elect treatment as an alternative to prosecution or incarceration, but asserts no rational basis exists for making such a distinction. The State argues that the legislation has a rational purpose based on an awareness that an addict's crimes are frequently motivated by his addiction, drug addicts often steal to support their habits, and treating addiction may directly eliminate crime. By contrast, the State says that a defendant's alcoholism is not usually directly related to his commission of a crime and consequently treatment would not directly result in lessening crime. Moreover,

possession of drugs is illegal but possession of alcohol generally is not.

■ We note that no constitutional issue was ever raised in the trial court. Failure to object at trial or specify an alleged constitutional error in a post-trial motion constitutes a waiver. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 178, 526 N.E.2d 467.) Nevertheless, we may consider the constitutional claim under the plain error rule. *People v. Perine* (1980), 82 Ill. App. 3d 610, 615, 402 N.E.2d 847; 107 Ill. 2d R. 615(a).

■ Neither the Federal nor State Constitution prevents the State from treating different classes in different ways. (*People v. Eckhardt* (1989), 127 Ill. 2d 146, 151, 535 N.E.2d 847.) Moreover, the State has broad discretion in the exercise of its police power for the health and safety of its citizens. A statute enjoys a presumption of constitutionality, and a legislative classification will be upheld against an equal protection challenge if any set of facts can reasonably be conceived which will sustain the classification. (127 Ill. 2d at 152.) Courts have recognized in evaluating similar legislation that the legislature was acting (1) to curb what appeared to be a springboard or incentive resulting in the commission of criminal offenses and (2) to rehabilitate defendants where possible. (*People v. Smith* (1974), 23 Ill. App. 3d 387, 389, 319 N.E.2d 238.) In *People v. Perine* (82 Ill. App. 3d 610, 402 N.E.2d 847) in upholding a provision excluding from treatment persons who possessed 30 grams or more of heroin, the court found no denial of equal protection since the legislature could have presumed such persons were traffickers in drugs and less likely to benefit from the rehabilitative aspects of the drug treatment program. (82 Ill. App. 3d at 616.) A classification need not include all persons in need of assistance. (*Meeker v. Tulis* (1985), 134 Ill. App. 3d 1093, 1097, 481 N.E.2d 810.) In dealing with a social problem, the legislature is not required to solve the entire problem at once, but may proceed in a step-by-step manner. (*People v. Gurell* (1983), 98 Ill. 2d 194, 205, 456 N.E.2d 18.) In this regard we note that the statute in question was repealed and replaced on July 1, 1988, by the Illinois Alcoholism and Other Drug Dependency Act, which defines "addiction" to include an illness characterized by preoccupation with alcohol. Ill. Rev. Stat. 1987, ch. 111½, par. 6351—3.

■■ The Act is clear that the legislature recognized alcoholism to be a serious social problem along with drug addiction. In treating the two conditions differently for purposes of criminal prosecution and treatment, we cannot say that the distinction made by the legislature did not have a rational basis. The legislature has wide discretion to classify offenses and prescribe penalties for the defined offenses.

(*People v. Neither* (1988), 166 Ill. App. 3d 896, 520 N.E.2d 1247.) Thus, the court in *Neither* upheld the constitutionality of the Act although not all drug addicts were eligible for alternative treatment. A statutory reform should not be held invalid because it does not go far enough in eliminating a particular evil. (*People v. Rhoads* (1982), 110 Ill. App. 3d 1107, 1117, 443 N.E.2d 673.) Clearly, the resources available for treatment of both groups of offenders are limited. The exclusion of alcoholics who are not also addicts within the definition of the Act is one of several ways in which the legislature has attempted to direct the available resources. On this record, we cannot say that the legislature's decision not to make alcoholics eligible for treatment under the Act is irrational. Rather, we consider that the decision is supported by the legitimate interest of the State in the prosecution and treatment of offenders.

Therefore, the judgment of the circuit court is affirmed.

Judgment affirmed.

JOHNSON and McMORROW, JJ., concur.