Sixth Division
November 2, 2007

No. 1-05-3868

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 04 CR 654 |
| | ) | |
| ORLANDO STEWART, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas R. Sumner, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Following a bench trial, defendant, Orlando Stewart, was found guilty of residential burglary and sentenced to 30 years' imprisonment. On appeal, defendant contends that: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in allowing evidence of his other crimes; and (3) his sentence is excessive.

At defendant's trial, James and Leslie Sykes testified that they live in apartment 603 at 344 West 28th Place in Chicago. James left the apartment on the afternoon of November 15, 2002, and Leslie left the apartment a couple of hours later. At that time, the apartment was in good condition and Leslie did not give anyone permission to enter it while she was gone. When Leslie returned home later that night, the TV and VCR were missing and the bed was in disarray. Both James and Leslie testified that they did not see defendant in their apartment nor did they see him remove anything from it. Leslie acknowledged that she did not remember locking the door when she left the apartment.

Sergeant Riga testified that on December 22, 2003, he received a flash message that a burglary had occurred and that the offender was a black male who was 6 feet tall and weighed

approximately 200 pounds. Sergeant Riga was subsequently directed to the location of a person matching that description. The officer approached this person, whom he identified in court as defendant, and announced that he was a police officer. Defendant then turned around and ran into a nearby building located at 2430 South State Street.

Officer Elizabeth Mishler was working security at 2430 South State Street at the relevant time and began to search that building after receiving a flash message describing defendant. Officer Mishler found another officer detaining defendant inside the building and she accompanied that officer to the police station, where defendant was processed and placed in an interview room.

Detective William O'Bren testified that he spoke to defendant at the police station. Defendant was speaking rapidly and Detective O'Bren asked him if he was a "hype." Defendant replied, "no. I'm just a drunk. I break in the houses, stay warm, and eat the food." Detective O'Bren acknowledged that he did not question defendant further or ask him which houses he had broken into.

Detective Eduardo Agron testified that he and his partner, Detective Bryant, spoke with defendant at the police station on December 22, 2003. During that conversation, defendant related that he would "get into houses" on a daily basis to take things that he could quickly sell. Defendant did not remember the addresses or places that he went through, but told Detective Agron that he would be willing to point them out to the police. Detective Agron and his partner then left the police station with defendant in order to locate the addresses that defendant was referring to. According to Detective Agron, defendant pointed to the building located at 344 West 28th Place and stated that between October and November of 2002, he had entered that

building through a side window and made his way to an upper floor. Defendant then walked through the hallway twisting doorknobs to see if any of the doors had been left open and eventually entered one of the apartments. Defendant initially said that he took food items and then said that he took a TV and a VCR. Detective Agron acknowledged that he did not ask defendant for a specific apartment number and that he did not recover a TV or a VCR from defendant.

The trial court denied defendant's motion for a directed verdict and defendant testified on his own behalf. According to defendant, he did not tell Detective Agron that he entered 344 West 28th Place or that he took any items from an apartment inside that building. Rather, defendant testified that he showed the detective some abandoned buildings in which he had been living. Detective Agron tried to indicate to defendant that maybe he had been in other buildings, but defendant told the detective that he had not. Defendant further testified that he did not take a TV or a VCR from apartment 603 at 344 West 28th Place.

The State then admitted certified copies of defendant's prior convictions for possession of a stolen motor vehicle and theft. Following closing arguments, the trial court found defendant guilty of residential burglary. In announcing its decision, the court stated that defendant's testimony "[did not] make sense at all" and had to be considered in light of his prior felony convictions, and that it found Detective Agron's testimony regarding defendant's statements to police to be more credible. The court also noted that although defendant did not admit to being in the particular apartment that was burglarized, he did admit that he was in that building and that he committed a burglary during the "critical period" between November and December of 2002.

1-05-3868

At the sentencing hearing, the State presented testimony that defendant attempted to break into a home on December 22, 2003, and was subsequently arrested and picked out of a lineup. The State also recounted defendant's prior convictions for armed robbery, robbery, battery, possession of a stolen motor vehicle, theft, criminal trespass to state property, and residential burglary. The State informed the court that defendant was not only Class X mandatory, but was also eligible for extended-term sentencing. Defense counsel pointed out that defendant was currently serving a 12-year sentence for the residential burglary that occurred on December 22, 2003, and asked the court for the same sentence in the current case. The trial court sentenced defendant as a Class X offender to the maximum term of 30 years' imprisonment. This appeal followed.

Defendant first contends that the State failed to prove beyond a reasonable doubt that he was guilty of residential burglary. Specifically, defendant asserts that the evidence failed to establish beyond a reasonable doubt that he entered or took any items from the Sykes' apartment. We agree.

When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). Although the trier of fact is responsible for assessing the credibility of the witnesses and weighing the testimony, the trial court's determination is not conclusive. *People v. Smith*, 185 Ill. 2d 532, 542 (1999). Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable

4

doubt of defendant's guilt. *Smith*, 185 Ill. 2d at 542.

"[P]roof of an offense requires proof of two concepts: first, that a crime occurred, or the *corpus delicti*, and second, that it was committed by the person charged." *People v. Cloutier*, 156 Ill. 2d 483, 503 (1993). A person commits residential burglary when he "knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3 (West 2004). Therefore, in this case, the State was required to prove that defendant knowingly and without authority entered the Sykes' apartment with the intent to commit a theft. See *People v. Robinson*, 125 Ill. App. 3d 1077, 1080 (2004).

Viewed in the light most favorable to the State, the evidence adduced at trial established that James and Leslie Sykes left their apartment in good condition on the afternoon of November 15, 2002, and that their TV and VCR were missing when Leslie returned home later that night. The evidence also established that more than one year later, on December 22, 2003, defendant pointed out the same residential building in which the Sykes lived to a detective and told him that between October and November of 2002, he entered that building through a side window and made his way to an upper floor. Defendant told the detective that he then walked through the hallway looking for open doors and eventually entered an apartment from which he took a TV and a VCR. Although defendant denied making these statements to police and testified that he was showing the detective buildings in which he had lived, the trial court did not believe defendant's testimony and instead found Detective Agron's version of events more credible.

When examining the evidence, it is our duty to give due consideration to the fact that the

5

trier of fact had the opportunity to see and hear the witnesses. See *Smith*, 185 Ill. 2d at 541. If, however, after such consideration, we are of the opinion that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt, we must reverse the conviction. See *Smith*, 185 Ill. 2d at 541. For the reasons that follow, we find this to be such a case.

We begin by noting that the evidence in this case connecting defendant to the residential burglary was not particularly strong. The State's case was based almost entirely upon oral statements that defendant made to Detective Agron when he was picked up for a burglary unrelated to the one at issue in this case. Those statements, however, were made more than one year after the Sykes discovered that their TV and VCR were missing and did not establish that defendant entered the Sykes' apartment and removed those items. Rather, defendant's statements only established that during a two-month period he entered the multi-unit residential building in which the Sykes lived and removed a TV and a VCR from an apartment. Defendant did not tell the detective which apartment he entered or that he entered the Sykes' apartment. Moreover, defendant's oral statements were not reduced to writing and Detective Bryant, who along with Detective Agron witnessed those statements, was not called to testify. Under these circumstances, we conclude that defendant's vague reference to entering the building located at 344 West 28th Place during a two-month period of time is insufficient to establish that he committed the residential burglary with which he was charged. *Cloutier*, 156 Ill. 2d at 503. Further, defendant's statements that he took food and then that he took a TV and a VCR from an apartment in that building do not make his admission any more specific so as to support a conviction for this residential burglary.

6

In addition to the weaknesses in defendant's oral admission, there were no fingerprints or eyewitness testimony placing defendant inside the Sykes' apartment or near their apartment building on November 15, 2002. See *People v. King*, 135 Ill. App. 3d 152 (1985) (reversing defendant's residential burglary conviction where no evidence placed him inside the victim's home and there was a "great deal of time," approximately 13 to 14 hours, in which the residential burglary could have occurred). There were also no witnesses who saw the Sykes' TV and VCR being stolen, and those items were never found in defendant's possession nor were they recovered by police.

While we recognize that the crime of burglary is often proved by circumstantial evidence (*People v. Schuld*, 191 Ill. App. 3d 809, 812 (1989)), this court has generally sustained convictions for residential burglary based upon greater evidence than is found in the present case. See, *e.g.*, *Schuld*, 191 Ill. App. 3d at 812-13 (defendant found guilty of residential burglary where police testified that defendant was apprehended coming out of the victim's apartment carrying a paper bag containing proceeds from the robbery); *People v. Johnson*, 82 Ill. App. 3d 338, 343 (1980) (burglary conviction affirmed based on evidence showing that defendant told eyewitnesses that he had been to the floor on which the victim lived, defendant was seen with two speakers belonging to the victim, he participated in the sale of the stolen property, and that property was subsequently identified as belonging to the victim); *People v. McIntyre*, 218 Ill. App. 3d 479 (1991) (defendant proved guilty of residential burglary beyond a reasonable doubt where two men were seen in the victim's backyard, they were in close proximity to a grill that had been removed from the victim's porch, and defendant was identified as the driver of a vehicle that sped away);

1-05-3868

*People v. Ramey*, 240 Ill. App. 3d 456, 461 (1992) (residential burglary conviction upheld where defendant gave a signed confession that he entered the victim's apartment and removed jewelry and other items and that confession was corroborated by the testimony of other witnesses).

Unlike the cases cited above, here defendant's oral admission to entering a multi-unit residential building during the months of either November or December 2002 and removing a TV and a VCR from an apartment, without identifying the apartment where the victims lived, does not in our opinion amount to sufficient evidence to establish that defendant entered the Sykes' apartment with the intent to commit a theft. We therefore conclude that the evidence presented at trial was so unsatisfactory that it creates a reasonable doubt as to defendant's guilt. Accordingly, defendant's conviction for residential burglary is reversed.

Finally, because we are reversing defendant's conviction for residential burglary, we need not consider the other issues he raises on appeal.

For the foregoing reasons, we conclude that defendant was not proven guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

McNULTY and O'MALLEY, JJ., concur.